UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

Ben Gary Treistman
    As a co-plaintiff,
    and as a Parent and Next Friend for,
A           T
    As co-plaintiff,
    A Minor,

                       Plaintiffs,

-vs-

Valerie Lyn Wacks, Esq.,
Lawrence Shelton, Esq.,
Amy Greene,
Kelly Whittaker,
Elisabeth Krisjanis, Esq.,
Jillian Jackson, Esq.,
Barbara Sorkin,
Denise Woltman,
Charlene Boswell,
Mary Ellen Schneider,
Joseph Bennett,
Other Unknown Named Persons,
Ulster County Municipality via its agencies
    Ulster County Child Protective Services &
    Ulster County Mental Health Dept.

All within their personal and official capacities,

                       Defendants.

_____

**12-CV-1897**

Civil Case No.: ____(GLS/CFH)____

**Civil Complaint**

Jury Trial Demand

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

DEC 2 8 2012

LAWRENCE K. BAERMAN, CLERK
ALBANY

## JURISDICTION

I.    This is an action prosecuted pursuant to Title 42 USC §1983, §1985(3), which

establish causes of action and provides that, §1983:

> "Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia, subjects,
> or causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

and that, §1985(3),

"If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; [ . . . . ] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

II.     Plaintiff A         . Treistman also asserts violation pursuant to 42 USC §1983, as a

        suspect class particularly liable to violation of their constitutional rights, due to her age

        and as a person covered under the Americans with Disability Act, as per 42 U.S.C. §

        12132, et seq.

III.    The Court has jurisdiction over this action pursuant to 28 USC §1331, §1343(3, 4),

        §2201, §1367, and other ancillary jurisdiction.

IV.     Venue is appropriate in this judicial district under 28 USC §1391(b), as the events that

        gave rise to the cause of action(s) occurred in this federal district.

V.      42 USC § 2000d also provides for prohibition against exclusion from participation in,

        denial of benefits of, and discrimination under federally assisted programs on ground

        of race, color, or national origin, disability or other discriminatory purpose.

VI.     42 USC §12101, et. seq.; Section 504 of the Rehabilitation Act of 1973, as amended;

        29 USC §794, and the New York State Human Rights Law ("NYHRL"), N.Y. Exec. L.

        § 290, *et seq.*

VII.   42 U.S.C. §§ 12201–12213 provides that no person shall be subject to retaliation for

raising or invoking the rights preserved by this legislation, nor shall any third party be

subject to retaliation for raising, prosecuting or invoking the law for another person,

and that,

"No person in the United States shall, on the ground of race, color, or
national origin, be excluded from participation in, be denied the benefits of,
or be subjected to discrimination under any program or activity receiving
Federal financial assistance."

## PARTIES

### Plaintiffs:

1.  Ben Gary Treistman (hereinafter **Ben Gary**)
    28 Garrison Road
    Shady, NY 12409
    Ulster County

    A United States Citizen, and resident of New York State

2.  A                       Treistman (hereinafter **Anya E**)
    [Minor Child]
    1 Maverick Road, Apt 12C
    Woodstock, NY 12498
    Ulster County

    A United States Citizen, and resident of New York State

### Defendants:

3.  Valerie Lyn Wacks, Esq., Attorney for Anya E. Cayley Treistman
    74 Mill Road
    Olivebridge, NY 12461

4.  Lawrence Shelton, Esq., Attorney for Suzanne M. Cayley
    261 Fair Street
    Kingston, NY 12401

5.  Amy Greene, Ulster County Child Protective Services Supervisor/Caseworker
    Ulster County Dept. of Social Services
    1091 Development Court
    Kingston, NY 12401

6.  Kelly Whittaker, Ulster County Child Protective Services Caseworker,
    Ulster County Dept. of Social Services
    1091 Development Court
    Kingston, NY 12401

7.    Elisabeth Krisjanis, Esq. Ulster County, DSS Counsel
      Ulster County Dept. of Social Services
      1091 Development Court
      Kingston, NY 12401

8.    Jillian Jackson, Esq, Ulster County, DSS Counsel
      Ulster County Dept. of Social Services
      1091 Development Court
      Kingston, NY 12401

9.    Barbara Sorkin, Ulster Co. Deputy Commissioner
      Ulster County Dept. of Social Services
      1091 Development Court
      Kingston, NY 12401

10.   Denise Woltman, Ulster County Child Protective Services Caseworker
      Ulster County Dept. of Social Services
      1091 Development Court
      Kingston, NY 12401

11.   Charlene Boswell, Ulster County Child Protective Services Supervisor
      Ulster County Dept. of Social Services
      1091 Development Court
      Kingston, NY 12401

12.   Mary Ellen Schneider, Ulster County Mental Health Department Social Worker
      239 Golden Hill Lane
      Kingston, NY 12401

12(a) Joseph Bennett, Ulster County Mental Health Department Social Worker/Supervisor
      239 Golden Hill Lane
      Kingston, NY 12401

13.   Ulster County Municipality
      c/o Beatrice Havranek, Esq.,
            County Attorney
      244 Fair Street, 5th Floor
      Kingston, NY 12401

### Statement of Facts

### Background Information

14.  From the time of A ''s birth, to which Ben Gary was present for and assisted in, to the age of 7, both Plaintiffs lived with each other daily and enjoyed the unfettered company and association of father and child; they enjoyed and celebrated holidays and birthdays together.

15.  They regularly went on father and daughter outings, swimming, movies, museums, outdoor fairs and events, scenic train rides, Hudson River boat rides, restaurants, vacations, hikes and walks, camping trips, fishing and other activities.

16.  A was also made a part of her father's extended family, uncles, aunts and cousins, and would attend birthday parties, holiday gatherings, and other extended family events.

17.  Ben Gary and A furthermore would partake in daily familial life, her father would care for her, feed her, read fairy tales to her nightly before bed. They would prepare dinner together, watch TV together, take care of A terrarium pets, play videogames together, assemble toys and models together, tended a vegetable garden together, and other at-home activities.

18.  Ben Gary also provided for her intellectual growth, teaching her about philosophy, religion, discussions about nature and people. Ben Gary also taught and tutored her to the game of chess, which she learned by him at age 5, and began to show a continuing enthusiasm and innate proficiency for, and planned for young chess player tournaments.

19.  A   also presented an increasing vocabulary that far exceeded children of her age; at the age of 7, Ben Gary administered to A   a children's IQ test to which she measured at 140.

20.  Ben Gary began inquiring and the process as to sponsor her admission to BrightKids SIG in Mensa, of which he is a member.

21.  Both plaintiffs, father and child, adored, cherished and treasured each other. They shared their lives together, loved each other, and had a strong emotional bond to be with one another. Neither plaintiff wanted to be separated from each other.

22.  Such association and parent child relationship is both a legal and natural right.

### Facts Pertinent to Department of Social Services (DSS) Defendants

23.  On or about May of 2011, Suzanne M. Cayley, mother of Plaintiff A   took A   B to the Ulster County Mental Health Department (UCMH), an agency of the Ulster County Department of Social Services, located at 239 Golden Hill Lane, Kingston, NY 12401.

24.  The UCMH receives federal financial assistance.

25.  Complaining to UCMH workers that her daughter A   was having temper tantrums at home and in school, and that she could not handle A   temperament without assistance, Cayley sought and obtained a psychiatric drug prescription for A   , a substance known as Geodon, manufactured by Pfizer Pharmaceuticals.

26.  This drug is not FDA approved for use in children, and is specifically warned as such on the manufacturers label insert. It additionally is known to have serious side-effects

on the heart, causes obesity, and can lead to permanent tardive dyskinesia, a condition

of tics and involuntary movements.

27.   A      's social worker at UCMH was and is as of the filing of this complaint Mary

Ellen Schneider, LMSW.

28.   Joseph Bennett, LCSW was the supervisor of Mary Ellen Schneider, who was aware

of, oversaw and was complicit in these actions.

29.   The drug was prescribed to A      as an off-label use by a Dr. Howard Gottlieb, a

psychiatrist at the UCMH, on or about June 17, 2011, but upon first dosing, A

had a bad reaction[1] and Cayley had to call the emergency room hotline, and it was

discontinued.

30.   However, on July 21st, 2011, Dr. Gottlieb restarted the medication and doubled the

dosage.

31.   Neither Cayley, Schneider, Bennett or Gottlieb ever consulted, advised or even

contacted Ben Gary, the father of A      , to either notify or inform him of the

treatment or to seek any input from him as to the psychotropic drugs his daughter was

being treated with, although they had a duty to do so, and in violation of administrative

procedural rules. Nor did they advise A      as to the name or possible side-effects of

the drug.

32.   Furthermore, A      as instructed by Cayley not to tell her father of the medicating

regimen.

---

[1]Specifically, as per filed medical reports, Anya E came home the day after dosing her with Geodon, fell
down on the couch and her limbs started to flail, her eyes were vacant and she started scratching at herself while
hissing, her legs rolling on the couch and not talking. This continued for an hour and a half, when she stopped and
asked for a drink of water. The event was medically determined to have been a seizure caused by the psychiatric
medication.

33.     Ben Gary was made completely ignorant of any of these developments or activities.

34.     On July 27, 2011 Ben Gary served Cayley via her counsel Defendant Lawrence
        Shelton, a discovery request demanding production of all medical records, diagnostics,
        treatments, medications, or other health care being administered to A

35.     On August 22, 2011, Lawrence Shelton advised by faxed letter, that he had collected
        all the requested medical, diagnostic, and treatment documents requested, specifically
        144 pages, for which he required the sum of $108.00 for production and release of
        copies. This package was paid for and received by Ben Gary.

36.     After review of the documents, on September 6, 2011, Ben Gary again contacted
        Defendant Shelton by faxed letter, requesting any other documents or reports relating
        to A        s medical treatments, if any.

37.     Shelton contacted Ben Gary back and affirmatively asserted that there were no further
        medical records for A        that were not included in the original 144 page document
        package.

38.     There was no mention in these pages of any medical diagnosis, treatments or
        medications prescribed or administered by Dr. Gottlieb to A

39.     On or about August 21, 2011, A        informed her father Ben Gary that she was being
        given a pill every morning by her mother, but that she did not know what it was, and
        that she was not supposed to tell her father that she was being given it.

40.     Furthermore, A        complained to her father Ben Gary that she could not sleep, was
        having nightmares, could not breathe properly, could no longer engage in exercise,
        could not concentrate on anything, told him that nothing felt real anymore, and was

feeling miserable and in distress. Ben Gary also noticed his daughter going into fugue-like states of staring at nothing with no response, and later not remembering doing so.

41.    Ben Gary furthermore noticed a new insatiable hunger, and an unexplained rapid and excessive weight gain on his daughter A        , averaging 1 pound per week starting from July 2011. (By October 10, she weighed 105lbs, and as of the filing date of this complaint, her medical reports indicate she weighs 125lbs, a BMI of 30.1, which considered morbidly obese. A healthy BMI for a girl this age is between is about 16 ±2.5 and weight should be about 60lbs ±17lbs. Such weight gain puts a child at risk for Type II diabetes, and heart disease complications.)

42.    Ben Gary also noticed that his daughter no longer enjoying playing chess, and could not maintain any of the concentration on the game that she had had before. Ben Gary also noted that A        could no longer go on the walks and hikes that they had engaged in before, as A        became too winded and did not enjoy the nature walks any longer. This loss of stamina further affected her ability to play on swings and climb playground structures.

43.    On September 25, 2011, A        and Ben Gary were dancing in his apartment to music, when A        told her father that her heart was beating too fast and that she was scared.

44.    Ben Gary told her to sit down and relax, assessed her condition and symptoms as to whether there was a need to bring her to the hospital. As she calmed down, he asked her how she felt and whether she wanted to go to a hospital. He observed her carefully, and concluded that she was just exerting herself during the dancing and that she had

fixated on herself. A        asked for a soft drink and some chips, and Ben Gary
decided that no medical intervention was necessary.

45.    However, A      's behavior and enervation concerned him, and he asked her what the
       name of the pill her mother was giving her was, what was it supposed to be for, and
       what did it look like. A      did not know the name of the pill, but described it as best
       as she could.

46.    Ben Gary researched on the Internet for possible drugs that matched the description of
       the pill and the side effects Ar    _ had relayed to him, but was unable to determine
       what it was. A _   asked him what it was and if it could hurt her, but Ben Gary was
       unable to tell her what it was. He told her he did not know what it was but would try to
       find out.

47.    Later that day both Ben Gary and A     went to a local event, the Garlic Festival, and
       Ben Gary carefully observed her for any ill effects throughout that day, but did not
       observe any further adverse symptoms from the incident earlier that day.

48.    Following this incident, A     conveyed to her mother that since she did not know
       what the pill she was being given was, she did not want to take it. She conveyed that
       she was afraid that the pill would hurt her heart, and refused to take it. Her mother
       forced her to take it nonetheless by physically fighting with her and pinning her to
       ground, forcibly putting the pill into her mouth, and demanding that she swallow it.

49.    Anya E furthermore refused to see Dr. Gottlieb and conveyed that her mother and
       Gottlieb were trying to poison her. Further forcible administrations of the pill were
       effected upon A      .

50.  None of these following incidents were relayed to Ben Gary, nor was he notified or advised of the forced medicating of his daughter, nor was an effort made to seek his input and ministrations as the treatment or condition of his daughter.

51.  On or about September 15, 2011, A___ was left alone in the apartment she was staying in with her mother Suzanne Cayley, while Cayley went out for some unknown purpose.

52.  At that time A__ exited the apartment to investigate something in the hall, and found that she was locked out of the apartment. Shocked and worried, she wandered outside into the apartment complex parking lot unaccompanied looking for her mother.

53.  She then discovered that she was further locked out of the apartment building, and started to cry, shouting for her mother and going further onto the parking lot and adjacent highway.

54.  At some point, a neighbor found her and consoled her, and brought her back to the apartment door entrance, where they waited for the return of her mother, who eventually returned and let A back into the apartment.

55.  On September 18, 2011 Ben Gary learned of this event, and confirmed it with the aforementioned neighbor.

56.  On September 21, 2011 Ben Gary called the New York State Central Register (SCR) Child Abuse and Maltreatment Hotline to report this incident. Previously and subsequently, Ben Gary had been explicitly instructed by Ulster County Child Protective Services (CPS) worker Kelly Whittaker that he had a legal duty and responsibility to report any such events, and that CPS could hold him neglectful for failing to do so.

57.     CPS workers on the case, Amy Greene and Kelly Whittaker subsequently determined

        that Cayley was not neglectful for leaving A      alone without a key, and in an

        apartment that locked itself upon exiting. Neither did they find Caley neglectful for

        putting A      into a situation where she was wandering the parking lot alone, locked

        out, and trying to find her mother.[2]

58.     However on September 28, 2011, in what Plaintiff alleges to be a retaliatory action for

        his reporting the above incident, Defendant Kelly Whittaker called Ben Gary to inform

        him of charges of neglect that had been reported to CPS against himself.

59.     On or about October 5, 2011, Plaintiff Ben Gary was directed to come into the offices

        of the Ulster County, NY, Child Protective Services offices, Kingston, NY, by

        Defendant Kelly Whittaker, ostensibly to be interviewed for fact finding purposes, in

        regard to the NYS Central Register call made in regard to his daughter A

60.     Ulster County Child Protective Services receives federal financial assistance.

61.     At this meeting, present were Defendants Kelly Whittaker and Amy Greene and

        Plaintiff Ben Gary.

62.     At this summoned meeting, Plaintiff was interrogated by the Defendants, and was told,

        under threat of prosecution in Family Court, of filing ex parte and/or preemptive

        restraining orders to prevent him from being in any contact with his daughter,

        consequent imprisonment, and of reporting these activities to the Family Court and

        charging him under law with accusations of prohibited, neglectful/abusive behavior,

---

[2]Furthermore, in another incident occurring December 16, 2011, in the Kingston Macy's Department store, Suzanne Cayley again lost Anya E, and had to call mall security, and after an extensive search did recover her. Amy Greene and Kelly Whittaker were also made aware of this incident, but similarly refused to make any indication of maltreatment against Ms Cayley.

and other threats, to cease and desist the interactions and parenting style and parenting decisions they had disapproved of.

63.   Specifically, the Defendants directed and extorted Ben Gary, to cease and desist, under law enforcement threats of the above mentioned legal sanctions and penalties, and other official action limiting his association with his daughter, the following federally privileged activities:

a.   Not feed his daughter sugar-free sodas, or sodas of any kind.

b.   Not feed his daughter Chicken McNuggets from McDonalds

c.   To not bring his daughter to McDonalds

d.   Not feed his daughter coffee, caffeine-free or otherwise

e.   Not permit his daughter to drink so-called "energy drinks"

f.   Prohibit him to investigate or discuss with his daughter the unknown drugs, pills, or other psychotropic substances that his daughter had been given by other persons without his knowledge; not to investigate their adverse side-effects, or to try and determine what they were, in cooperation with his daughter.

g.   Asserted to him that he has no right to determine what drugs his daughter was being given, and to pursue such information would result in charges against him.

h.   Relinquish his responsibility to protect his child from being given unknown drugs.

i.   Directed him to ignore possible medical contraindications, allergies, incompatible foods, or developing side-effects that could put his daughter in danger. That instead of effecting actions to be aware of and to prevent these risks, the Defendants directed Ben Gary to bring his daughter to the hospital only after these

adverse effects had already developed and were acute, and his daughter was already in medical danger.

j.   Prohibit him to seek medical records on his daughter's treatment.

k.   To accept medical diagnosis' without question, or reasoned critical input, involvement and feedback.

l.   That he is prohibited from measuring or monitoring his daughter's height, or weight; asserted to him that he should be unconcerned with his daughter's weight and should ignore it.

m.   That he should not discuss his daughter's weight with her in anyway; that he is prohibited from discussing, planning with her or encouraging her to healthier exercise and eating habits.

n.   Not to question his daughter as to how she is doing in school.

o.   Not to discuss any topics with his daughter, or ask any questions about anything to do with his daughter's life during the time when she is not with him (which at that time was 6 ½ days of the week not with her father).

p.   Informed Ben Gary that he is not entitled by law to know what drugs are being fed to his child.

q.   Informed Ben Gary that his daughter could be being given birth control pills, and he had no right to that knowledge or involvement or objection either.

r.   Counseled Ben Gary on the law, and procedure and legal standards of the circumstance, his available legal options, and his constraints based upon their interpretation of the law.

     s.   Demanded that Ben Gary not discuss any questions his daughter may have about their visits, living arrangements or court proceedings concerning her future with him.

64.   Later, in concert with Defendants Elisabeth Krisjanis, Esq and Jillian Jackson, Esq., and Barbara Sorkin, all these defendants did in fact obtain a restraining order taking A       away from her father and prohibiting any further contact between Ben Gary and his daughter, premised upon these allegations and ad hoc prohibitions, causing great emotional distress and grief, and separation anxiety between father and daughter.

65.   Additionally, these defendants further petitioned the court to find Ben Gary guilty of neglect and/or abuse of his child for these committing these allegations and acts.

66.   All these defendants were aware that Ben Gary was in the middle of a custody proceeding for his daughter A       and were motivated in part to disrupt and discredit Ben Gary's perception of parental fitness to any legal proceeding, to the parties and to the public, and in support and favor the mother of A     , for any proceedings.

67.   The Defendants in fact persecuted, and then prosecuted, Ben Gary for affirmatively protecting his daughter from unknown substances being given to her and that were perceptibly harming her; acts that had he not attempted to discover what the substance was, would be considered neglectful.

68.   Furthermore Defendants' actions were motivated in part due to the personal and institutional gender discriminatory belief that a child should be given custody to and raised by its mother, and were motivated to initiate a neglect proceeding against Ben Gary in furtherance of that discriminatory goal.

69.  Upon information and belief, the captioned Defendants, as a pattern and practice,
     disproportionately charge more men with neglect and abuse charges, than women, and
     with discriminatory premise and/or purpose.

70.  Starting on or about October 11, 2011, and resultant from these filings, petitions and
     restraining orders based upon these allegations, both A        and Ben Gary's contact,
     association and child-parental familial interaction with each other was truncated
     almost entirely and they were only allowed to see each other for 1 hour a week, in a
     room, with a government employee observing them, under threat of imprisonment and
     criminal charges if contact was made in any other way.

71.  Based upon these allegations and actions by the Defendants, Plaintiff A        was
     denied unfettered contact with her natural biological father, only allowed to see him
     while in the presence of an another adult, observed him searched by a police officer
     every time she did see him, and was told by the CPS employees that said employees
     was there to keep her safe from her father. Furthermore Plaintiff A      _ was instructed
     not speak to her father about unapproved topics, or he would get into trouble and be
     sent to jail, causing her grief and anxiety, and the continuing fear that if she said the
     wrong thing she would be causing her father to go to jail.

72.  Additionally, the terms and conditions of these visits, as to behavior between the
     parties, or conversations that were prohibited, were never conveyed to either Plaintiff,
     and left intentionally indeterminate and ad hoc, despite repeated verbal and written
     requests from Ben Gary to Ulster County Child Protective Services; verbal requests
     were submitted throughout that time and when no responses were forthcoming, written

Page 17 of 89

letter requests were sent via certified mail  by Ben Gary to UC Child Protective

Services, Defendant Denise Woltman on April 2, 2012 and May 2, 2012.

73.   Plaintiffs thus were placed into further distress and be threatened as to some unknown,

un-noticed, arbitrary or capricious prohibition of unspecified, unarticulated conduct or

conversation that could end their visit, cease visits altogether, cause criminal charges

to be filed, and/or be reported as a violation of court orders and rules to the family

court.

74.   Between approximately December 16, 2011 and January 10, 2012, the Defendants and

their agency recommended and permitted the Plaintiffs to visit with each other at the

local McDonald's Restaurant for one hour, instead of the CPS offices rooms. This was

stated to be a favorable status for visits. and was to lead to further lifting of restrictions

as to visits.

75.   On January 16, 2012, Defendant Denise Woltman unilaterally changed without notice

to, or confirmation from Ben Gary, the scheduled appointment date for the next visit.

The original date scheduled was for January 18, 2012, and Woltman changed the date

to January 17, 2012.

76.   A          was brought to the McDonald's Restaurant on January 17, 2012, and was told

she would be seeing her father; Anya E waited in anticipation to be with her father for

the 1 hour permitted per week.

77.   However, when her father, Ben Gary, did not appear, because as aforementioned he

was never notified as to the change in appointment date by Woltman, A      . became

very distraught, weeping and crying loudly, fearing her father had forgotten about her,

and suffered from emotional distress and grief.

78.   Defendant Woltman believed that this behavior was unacceptable, declared that Anya
      E was uncontrollable, and directed and effected that A      be brought to the
      emergency room at Kingston Hospital by ambulance to be treated for said behavior.

79.   After this incident, Woltman and other CPS defendants attributed and laid
      responsibility for this incident upon A       , and citing her disability as a reason,
      punished her for her expression of grief and distress for having being denied a visit
      with her father. The punishment effected was to no longer permit the Plaintiffs from
      having the more permissive and open visits in the restaurant or outside generally, and
      to force them to only have visits in the constrained, highly controlled and less
      favorable conditions of the CPS offices, due to discriminatory treatment, and in
      violation of freedom of expression.

80.   Between December 20, 2011 and January 25, 2012, Ben Gary had retained Dr.
      Kathleen Caproni, of Sun Creek Center, Stone Ridge, NY, for evaluation, co-parent
      and child-parent counseling with A      .

81.   On or about January 27, Joseph Bennett in concert with Mary Ellen Schneider of
      UCMH called Dr. Kathleen Caproni, and demanded that she cease all further therapy
      and counseling, initially citing as sole reason the inability of UCMH to bill A
      health insurance while Caproni was counseling her, but days later asserting a new
      reason that they would forbid "parallel therapy" to occur. Caproni, due to the repeated
      pressure from Bennet, Schneider and other UCMH Department personnel, withdrew
      from any further co-counseling of A      and Ben Gary, citing a concern to not have
      institutional friction or interference with other patients with the UCMH Department.

82.    On February 15, 2012, Defendant Denise Woltman in the CPS waiting room, directed
       Ben Gary, under explicit threat of complete denial of visits with his daughter, to not
       photograph or videograph his daughter during their time together, as they had always
       done so in their association together.

83.    On June 14, 2012, Defendant Denise Woltman called Ben Gary by telephone, and
       accused him of engaging in prohibited conversations with his daughter Aᴵ ᶜ ᵎ, to wit:

       a.    Conversations about their ongoing co-counseling therapy sessions with Mary-
             Ellen Schneider occurring at the Ulster County Mental Health Department.

       b.    Plans for future visits, the places they would go and the things they would do, and
             how they will spend their time together when re-united.

       c.    The questions A ᶜ  had asked her father Ben Gary as to when they would be
             able to get back together as they had before they were forced to be separated by
             the Defendants.

       d.    Where the Plaintiffs father and daughter could spend time together when re-united
             again.

       e.    What efforts Ben Gary was doing to try to get them re-united again.


84.    Woltman demanded that any speech, association or conversations between the
       Plaintiffs that touched upon these topics or areas of conversation to cease and desist,
       and any such conversation would be dealt with swiftly and harshly. Additionally,
       Woltman asserted that she would not advise, inform or specify Ben Gary as to any
       other unspecified topics he was prohibited from discussing with his daughter,
       informing him that if he did so though, he would face further sanction; Woltman and

Defendant Charlene Boswell further followed up these prohibited speech and association notices by certified letter.

85.  On June 21, 2012, Defendant Woltman contacted Ben Gary by telephone, and again accused him of prohibited speech, association, parenting, and conversation with his daughter, this time increasing the arbitrary prohibitions and constraints upon their association, to wit:

   a.  He could not convey to her the rules or constraints that the agency had required upon their speech and association, or any communications the Defendants had made to him.

   b.  He could not discuss with her any past experiences they had together, nor were they to discuss any possible future plans together with each other.

   c.  Prohibited any conversation dealing with topics other than "the here and now".

   d.  He was prohibited from discussing with her or to teach her any of their religious convictions, ideas or practices that they had shared together. Furthermore the Defendants were aware that A        , was being regularly brought to Catholic church and being taught Bible studies by her mother and yet made no prohibitions against those acts.

   e.  A      , was advised and threatened by the Defendant(s) and others that Ben Gary would go to jail if she talked to him in any unapproved way, and she conveyed this fact to Ben Gary on June 20, 2012, causing her great emotional distress and consternation.

86.  Ben Gary was thus again extortionately threatened by Defendants, that if he did not abide by their constraints to his association, speech, religious teachings convictions

and interactivity, and parenting with his child to these arbitrary demands, Defendants

Woltman and Boswell would put an end to their permitted visits, interactions, and

father-child parenting associations altogether.

87. Woltman and Boswell also followed up this phone call with a confirming letter by

certified mail.

88. On June 29, 2012, at a NY OCFS fair hearing administrative trial, before Hon. Patricia

Patwell, ALJ, the CPS case-worker defendants, Kelly Whittaker, Amy Greene, and

others, did, under oath submit as evidence in the official administrative charging

documents and investigative reports, dated between September 2011 and November

2011:

a. Written false statements that Plaintiff had a history of prior Domestic Violence;

b. Written false statements asserting A _ ⸗ as being highly autistic;

89. Neither of these alleged statements of fact are true, and the Defendants knew or should

have known were not true.

90. The purpose of filing these false statements of fact, was to improperly bias the

evidence on record, and to skew the administrative judge's findings in light of those

false facts, and to obtain an administrative affirmation their original improper charges

and indications of maltreatment against Ben Gary[3].

91. From June 8, 2012 to December 10, 2012, generally meeting once every two weeks,

ostensibly for "family counseling", Defendant Mary Ellen Schneider demanded,

directed and asserted to both Plaintiffs that they should not and would not have

---

[3]On Aug 15, 2012 the NYS OCFS ruled that Ben Gary did not commit any acts of maltreatment, and that
the charges against him were unfounded.

conversations with each other that concerned or had the topics of [1] visitations, [2] future plans for reunification and association, [3] past experiences and time together, [4] court or legal topics; if Schneider observed or discovered that the Plaintiffs had participated in such prohibited conversation, Schneider threatened that she would make sure that the "counseling" would continue, and she would never issue a discharge from "counseling", thus ensuring that the Plaintiffs would be prevented from ever being reunited.

92.  Schneider justified these prohibited conversations by stating variously that [1] she did not think these were topics that were appropriate for a father and daughter to discuss under the circumstances, and that [2] because A      had a disability, she should be prohibited from discussing these topics, and that [3] because the agents and officials at Ulster County CPS had prohibited these conversations it would be less confusing to the Plaintiffs to comply with those restrictions.

93.  On numerous occasions throughout that period, Plaintiff Ben Gary questioned to Schneider the legal viability of these prohibitions of association and speech between himself and his daughter, and informed her that such speech and association was protected under constitutional law.

94.  On one of those occasions, on or about September 24, 2012, so as to clarify the circumstances,  Ben Gary provided an example to Schneider of the freedom of religion and the practice thereof between himself and his daughter, and how that too would be protected, and that is something that Schneider could not prohibit.

95.  Schneider replied that she didn't care about such legal protections, that she considered them largely academic or theoretical and unenforceable, and that if she thought that

religious practice, association and speech between a parent and their child was not
appropriate she would preemptively prohibit that activity as well.

96.   On December 19, 2012, Defendants Denise Woltman, in concert with Defendant
Charlene Boswell, called Ben Gary to a conference room at Ulster County CPS offices,
and accused him of having disciplined his daughter on December 12, 2012, by having
pinched her on the buttock in response to her exhibiting excessive horseplay;
Defendant Charlene Boswell was not present, but was cited by Woltman as having
been previously consulted and in concurrence with this conference.

97.   Woltman asserted that Ben Gary did not have the right to discipline his child A
as such, and directed him to never effect said discipline, and then threatened sanctions
upon him, of further denial of association and visits with his child if he did so.
Furthermore in retaliation for Ben Gary questioning the exercise and assertion of his
parenting rights at this meeting, Woltman demanded redundant, unnecessary and
gratuitous'parenting education classes' to "correct" his expression, beliefs and practice
of those rights, also under threat of  further denial of association and visits with his
child if he refused to do so.

98.   The restraining order sought and obtained on October 11, 2011, by the defendants
Amy Greene, Kelly Whittaker, Elisabeth Krisjanis, Esq., Jillian Jackson, Esq., Barbara
Sorkin, so as to prohibit the aforecited constitutionally privileged and protected
behavior and activity, has been effective since then and has been in continual effect to
the filing date of this complaint, and has resulted in essentially a complete denial of
association and interaction of the Plaintiffs', despoiling the parent/child bonds between

them, enforcing a separation apart from each other for 99.4% of the time, and causing

extreme mental anguish, grief and emotional distress by that separation.

99.    All during that time Plaintiff Ben Gary exercised continual efforts and due diligence in

administrative and judicial venues to oppose the actions of the defendants and to retain

exercise of the rights he and his daughter A    were being denied and that were

violated.

100.    For that duration to the current date, and the continuing duration subsequent to the

filing of this complaint, the county defendants are responsible for denying the free

association of the instant Plaintiffs, and for denying other rights, and are included as

damages and injuries suffered and cited in this complaint as a continuing and ongoing

injury, and will be amended as a calculable sum certain as is necessary for damages.

Plaintiffs have received treatment for emotional distress and grief, and continue to

receive ongoing therapy to deal with the grief of losing a parent, and of losing a child.[4]

101.    Within this duration and as of January 2013, these defendants caused the co-plaintiffs,

father and daughter, to be forcibly denied familial contact and association that included

important holidays normally spent, enjoyed and celebrated together – including two

consecutive birthdays, two Thanksgivings, two Halloweens, two Christmases, two

New Years Days, an Easter, a Father's day, and an Independence day, and the

association of A    's paternal relatives.


**Facts Pertinent to Defendants Valerie Lyn Wacks and Lawrence Shelton:**


102.    Ben Gary Treistman is the father of Plaintiff A    Treistman.

---

[4]Plaintiffs have been receiving therapy and counseling from Dr. Kathleen Caproni, PhD, Mary Ellen
Schneider LMSW, Michael Astor MA, LCSW-R, and Beth Abrams, MD.

103. Suzanne Mary Cayley is the mother of Plaintiff A          T.

104. On February 14, 2011, An      mother, Suzanne M. Cayley, filed an ex parte petition
in New York State Family Court, Ulster County, citing differences in parenting style
and seeking full custody of A        .

105. On that date Suzanne Cayley immediately prohibited all contact or communication
between Plaintiffs Ben Gary and A      father and daughter.

106. Cayley also ceased all contact and communication between A        and Ben Gary's
extended family members.

107. A      : vehemently objected to being forcibly estranged from her father and expressed
her wishes to be reunited with him.

108. Both father and daughter, plaintiffs in this case, due to this imposed isolation were
emotionally distressed, in anguish and grief, and suffered from separation anxiety.
Both wished to be again in each other's company, associate freely, speak with each
other, and enjoy their parent-child relationship as they had prior to the petition's filing.

109. Cayley had conflicting personal and legal reasons from A        's legal and personal
positions in the case for keeping A      and Ben Gary separated[5]; A      's personal
wishes and legal position were in conflict with Cayley's, and Cayley had a conflict of
interest in the matter in regard to A      's legal position.

110. On February 15, 2011 the Family Court assigned Valerie Lyn Wacks, Esq., to
represent A      : as her attorney in the proceedings, and to exclusively advocate for
        's wishes in court.

---

[5]Cayley stood to gain financially by obtaining court ordered full child support payments by achieving full
custody; due to her personal animosity toward the father, Cayley sought to estrange Anya E's father from Anya E so
as to remove him as an involved and influential parent and to have exclusive parenting to herself with Anya E; due to
her personal animosity toward the father, and documented mental pathology, as an exclusive caretaker Cayley sought
to unilaterally inculcate Anya E with her own unfounded beliefs and opinions about the father, without countering or
critical input from the father. None of these positions were in advocacy of or coincided with Anya E's wishes or
legal stance.

111.    Wacks' explicit legal duty was effectuate Aᵢ      ; legal position in court to advocate
        her wishes, and had no other legal duty to any other entity or cause.

112.    On February 23, 2011, Ben Gary filed a cross-petition also seeking sole custody.

113.    On February 23, 2011, Suzanne Cayley responded by filing a family offense petition
        against Ben Gary, claiming harassment and reckless endangerment, and then sought
        and received an order of protection for herself and for A        , prohibiting contact
        from Ben Gary; on March 8, 2011 after a hearing, the order of protection was
        rescinded.

114.    Pursuant to subsequent court related psychological evaluations, Suzanne Mary Cayley
        has been diagnosed with presenting Borderline Personality Disorder tendencies, and
        other court ordered psychological evaluations revealed that she had been instilling
        false accusations of abuse to A      . about her father[6].

115.    Valerie Lyn Wacks, Esq., a Defendant in this civil case, was paid by the NYS Office of
        Attorneys for Children, and/or other public agency.

116.    The New York Office of Attorneys for Children, and/or other public agency paying for
        Defendant Wacks services, receive federal financial assistance.

117.    A      was not given the opportunity or option to accept or reject this assignment of
        counsel, or to ask for a change of counsel. A      ; was not informed of her rights and
        discretion in participating in the court case, nor was she informed of her representing
        counsel's obligation to advocate for her wishes.

118.    Said assignment was involuntary, and made by the county municipality through its
        agents without A      's input.

---

[6]In re, Report Recommendation Dr. Steven B. Silverman 5/17/2011, Report evaluation Dr. Kathleen
Caproni 2/1/2012.

119.   As the attorney for A   E, Wacks had an absolute duty to Plaintiff Anya E to

represent and advocate for A    's wishes and desired goals and outcome in the

Family Court, pursuant to federal constitutional law.

120.   Specifically, and pertinent to this cause of action, Defendant Wacks **did not have**

**discretion** to:

a.   Discriminate against A        on the basis of gender, age,

disability or perceived disability, and deny her the rights secured

by federal law based upon such discrimination.

b.   Substitute her own wishes for A      ; advocate for anything

other than A        's wishes in the Family Court; or to prosecute

for the best interests of A      if in doing so it was different

than A1     's wishes for the case outcome, or interim outcome.

c.   Represent or advocate for any other party to the case, unless it

was in furtherance of A        's advocacy.

d.   Ignore, dismiss, or be negligent in determining A     s wishes

and desires in the case.

e.   Ignore an affirmative duty to inform the Family Court of the

A        's wishes.

f.    To lie or misrepresent to the court A       's wishes or statements
      of her wishes.

g.    To reveal or disperse confidential communications or
      information, under the client/attorney obligation, to parties or
      persons any information A:      requested to keep confidential.

h.    To refuse to cooperate with, and share in cooperation with, any
      person A        directed her to in assisting the prosecution of her
      case, or to affirmatively interfere with that cooperation.

121.   On March 8, 2011, a *pendente lite* hearing on the ex parte custody order was held.

122.   At the hearing, Defendant Wacks made an oral motion to substantively recuse the
       testimony, wishes and intent of the Plaintiff A       on the basis she was disabled,
       even though these were rights reserved and entitled to A:     by law.

123.   Wacks further asserted that she would unilaterally and presumptively substitute her
       own substantive assessment and unilateral plan of advocacy for A       , instead of
       advocating for A       's wishes.

124.   Defendant Wacks did not have any substantive cause or confirmed basis to make this
       conclusion and decision, other than her explicitly stated prima facie and conclusory
       discriminatory motive.

125.   Pursuant to this abdication of her legal duty to A.     , based upon discriminatory
       grounds, at this hearing Defendant Valerie Lyn Wacks argued strongly in favor of the
       restraining order separating her client Plaintiff A.     from Ben Gary, against the

wishes of her client she was assigned to represent, A..., 'ho very much wanted to be reunited with her father.

126.   On March 11, 2011, Ben Gary filed a motion with the Family Court, moving for an injunction against Suzanne Cayley against removing A₁  from her existing residence that was shared by her father Ben Gary, to places unknown; A.  wished to remain in her home and near her father.

127.   On March 18, 2011, Ben Gary filed a motion with the Family Court, moving for an order directing Defendant Wacks to recognize Plaintiff A⁻  's "wishes, preferences, and other input as to instant matters of Custody/Visitation"

128.   On March 20, 2011, Defendant Valerie Lyn Wacks opposed the motion that sought to keep A  , in her current residence, defending Suzanne Cayley's custodial rights to do what she wanted, a person Wacks did not represent and should have had no advocacy for, and in contradiction of the wishes of Wacks' client she was assigned to represent, A:  , who wished to remain in the residence that was in the same house as her father, and not be taken even farther away from him.

129.   Wacks' advocacy for Ms. Cayley, in opposition to both instant Plaintiffs' wishes, further evidenced a gender based discriminatory motive against Ben Gary.

130.   On or about March 26, 2011, Defendant Wacks filed a response to the Ben Gary's motion for Wacks to recognize A  s wishes, and for Wacks to properly advocate for those wishes.

131.   Wacks admitted in that response that she intended to use her own "substitute judgment" in place of A  's wishes, based upon her own inexpert opinion and discriminatory premise and intent of treatment for '  :.

132.   Notwithstanding this, Wacks admitted that it was her duty to inform the court as to

A         's wishes, of which Wacks never did; Wacks furthermore requested a

psychological evaluation of A _   ;, to further determine whether A         was

psychologically unable to express her wishes.

133.   Based substantially upon Defendant Wacks advocating the removal of A         from

her home and father, and who had falsely represented A·      s wishes to the court, on

March 31, 2011, the Family Court denied the motion, permitting Suzanne Cayley to

physically remove Ai _   ; from her residence, and be taken away from her father to

places unknown, to which Suzanne Cayley did, on or about March 31, 2011, in fact

forcibly remove A         ; from her residence and for the purposes of taking her away

from her father. The motion's denial and consequent removal Ai      from her father's

residence were due substantially to Defendant Wacks' argued opposition.

134.   On or about March 25, 2011, Ben Gary filed a motion with the Family Court seeking

shared custody of A        ;, during the *pendente lite* proceedings; Defendant Valerie

Lyn Wacks opposed the motion, against the wishes of her client she was assigned to

represent, A        ;, who wished to be reunited with her father.

135.   On June 3, 2011, the Family Court denied the motion, permitting Suzanne Cayley's

continued prohibition of contact or communication between A        ـ and Ben Gary.

This denial was due in substantial part to Defendant Wacks' argued opposition.

136.   On April 4, 2011 a hearing was held pursuant to a filed a motion by Ben Gary for

increased visitation with his daughter A·       ;, seeking equal time with his daughter as

her mother had. At this hearing Defendant Valerie Lyn Wacks opposed this motion, in

contradiction of the wishes of her client Plaintiff A        ;.

137.   On April 25, 2011, Ben Gary filed a motion for increased visitation with his daughter

A        , seeking equal time with his daughter as her mother had, and on June 15, 2011

a hearing was held. At this hearing Defendant Valerie Lyn Wacks opposed this motion,

in contradiction of the wishes of her client Plaintiff A

138.   On May 17, 2011, pursuant to court order in response to motions made by Wacks and

by Ben Gary, a psychological evaluation was performed upon A          by Dr. Steven

B. Silverman, a licensed psychologist.

139.   Dr. Silverman, in his filed evaluation report, did not conclude that Anya E was unable

to express her wishes competently; this evaluation was served upon Defendant Wacks.

140.   On July 5, 2011, in response to a motion to dismiss a petition for contempt, Defendant

Wacks did again advocate for the rights of the Ms. Cayley, a person Wacks did not

represent, and an advocacy that contradicted the wishes of her client A

141.   Wacks' submission further evidenced a discriminatory motive against Plaintiff Ben

Gary, based upon gender.

142.   On July 10, 2011, A         conveyed to Ben Gary that when she shared her wishes with

her mother (Ms. Cayley the temporary custodial parent), that she wished to have more

visitation time with her father, her mother would cry hysterically, and punish her in

various ways, and advised her father that she learned never to speak of her wishes

again to her mother out of fear of being punished.

143.   A        affirmed that she had already conveyed these wishes to her attorney Valerie

Lyn Wacks, but that Wacks did not agree with what A          wanted, and affirmatively

opposed her desires. A         wanted to communicate further with Wacks, but at that

juncture however she was afraid that Wacks would disclose to her mother these

wishes, and relayed the fact that she was afraid of her mother hearing anymore of her wishes, for fear of retaliation and further punishment.

144.   Because of these constraints and her wishes, A        asked her father, Ben Gary, to confidentially relay her wishes and concerns to her attorney Wacks.

145.   In response to his daughter's request, Ben Gary prepared a letter in his daughter's behalf conveying her wishes and concerns, and supplanted the letter with a DVD home movie video of his daughter stating and expressing these wishes desire for confidentiality on July 10, 2011 in conversation with Ben Gary in Olivebridge NY.

146.   Ben Gary also stressed that his daughter had requested confidentiality of these wishes, and on July 11, 2011, Ben Gary sent the letter and DVD to Valerie Lyn Wacks, conveying to Wacks A        's wishes in the matter of visitation and custody, by Certified Mail.

147.   On or about July 19, 2011,        again directly told her counsel Valerie Lyn Wacks, in an in-person consult, that she wanted at least 3 consecutive nights per week visitation during the custody proceedings, and that she wished ultimately to have her father have physical custody of her in the custody proceedings.

148.   Upon receiving her clients clear, wishes, instruction and directive Wacks refused to entertain, accept or prosecute those wishes for her client and told A        she would not do so, and would continue to substitute her own wishes for A      s wishes in the case.

149.   A    E furthermore informed Wacks that she should consult with her father, Ben Gary, and cooperate with him in furtherance of her wishes.

150.   A        conveyed these facts to Ben Gary, and other witnesses, in person on July 24, 2011.

151.   On or about July 29, 2011, Ben Gary moved for increased visitation time with his
       daughter, in concert with her wishes for same, of which Defendant Wacks was aware
       of and advised.

152.   On August 18, 2011, a hearing was convened in Ulster County Family Court, to
       entertain Ben Gary's motion for increased visitation.

153.   At that hearing it was disclosed, via oral motion and written motion from Defendant
       Lawrence Shelton dated August 10, 2011, that Shelton in fact affirmatively conspired
       with Defendant Valerie Lyn Wacks, between July 12, 2011 and August 18, 2011, to
       oppose Ben Gary's motion for increased visitation, and did in fact contradict and
       oppose Wacks' own client's, A          , wishes in the case. Shelton's acts both in
       conspiracy with Wacks, and independently of his own recognizance, were knowingly
       and intentionally premised upon discrimination against A₁          , to deny her rights.

154.   Additionally, the motion submitted on the day of the hearing was never noticed or
       previously served upon Ben Gary prior to the hearing as required by NYS Civil
       Practice Law and Rules (CPLR); there could not have been timely service as NYS
       CPLR Rules require a minimum of 13 days from serving and filing date by mail and
       the return date for response.

155.   Further jurisdictional defects of the motion were that it had no Notice of Motion cover
       and had no Certificate of Service affidavit. All in violation of NYS CPLR Rules, and
       in violation of due process, denying Ben Gary an opportunity to respond or oppose
       prior to submission to the court.

156.   Additionally, Defendant Wacks shared and disclosed attorney-client privileged
       information, that Plaintiff A          explicitly and specifically requested be kept
       confidential, with Defendant Shelton, who was counsel for Suzanne Cayley; Wacks

additionally shared the DVD video with Suzanne Cayley, and other unknown named persons, again substituting her own intent and wishes for A     and illegally violating A     's rights, premised upon discrimination and other impermissible intent.

157.   In the motion submitted by Defendant Shelton, in referencing the confidential DVD video provided by Ben Gary and A     to Defendant Wacks, and which affirmed that its contents were obtained from, filed in concert and conspiracy with, and certified by Defendant Wacks, Defendant Shelton submitted false statements under oath to the court in the form of quotations from Plaintiff A     that she never made, as well as misrepresenting conversation between A     and Ben Gary by excerpting dialogue out of context to present a substantively false presentation of facts and conversation to the court, in opposing the increased visitation that both Plaintiffs Ben Gary and A     had sought.

158.   In particular, **Defendant Shelton**, in acknowledged conspiracy **with Defendant Wacks, falsely asserted** to the court via sworn affidavit, that A     had explicitly stated, (in referencing the DVD video provided to Wacks):

**"You didn't hit me all the time"**

Which was a false submission to the court, affirmed and submitted under oath by both Defendants Wacks and Shelton, and a substantially different statement than **what Plaintiff A     actually said**, which was (referencing the original):

   **"They think that you're the one who hit me all the time, but you're not."**

159.   Due to these misrepresentations of fact and falsehoods submitted to the court by Defendants Wacks and Shelton, and based upon the submissions of Wacks' and

Shelton's discriminatory "substituted judgment" the court subsequently denied the motion for further increases in visitation, causing emotional distress and grief to the Plaintiffs.

160. These defendants furthermore corrupted the court record under their oaths as officers of the court, by submitting false statements purported to be stated by Anya E, that were materially the opposite of what she actually stated and expressed.

161. On October 19, 2011, an additional psychological evaluation report was made on Anya E, by psychologist Dr. Kathleen Caproni, PhD to determine, among several things, whether A    E was able to have and express her wishes competently. The evaluation report affirmed again that A    had the full capacity to do so. A copy of that report was also served upon Defendant Wacks.

162. On August 17, 2011, Defendant Wacks, by faxed letter, instructed Plaintiff Ben Gary to not discuss any court matters with A    E, refused to cooperate in the case with Ben Gary, ignoring her client A    's desire and directives to cooperate with her father in the court proceedings.

163. Wacks communication to Ben Gary was in furtherance of her motive to isolate her own representation of A    from any adult oversight, and continue her acts of discrimination unimpeded, claiming the right to discriminate against A    E on the basis of disability.

164. The acts detailed supra and infra by Defendant Wacks and Shelton, furthermore constitute legal malpractice; Wacks caused irreparable harm and damages, and a knowing and intentional pattern of the breach of legal duty to her client Aɟ    .

165. On or about October 11, 2011, a NYS FCA Article 10 hearing was convened, to determine whether a Temporary Restraining Order (TRO) would be issued against Ben

Gary preventing contact with his child A            (described in detail supra, see <u>Facts</u>

<u>Pertinent to Defendants Dept of Social Services (DSS) Defendants</u>), paragraph 23.

166.    At this hearing, Defendant Wacks, misrepresenting the wishes A           ∴, did not oppose

issuance of this TRO. Wacks in fact advocated for the issuance of the TRO, against her

client's wishes, and went further on her own initiative in moving the court to

additionally prohibit telephone communications between Ben Gary and Ⅎ          ∴, again

in contradiction of her client's wishes, who did not wish to be estranged from her

father.

167.    In that and subsequent hearings and fact finding in the Ulster County Family Court on

this TRO issue, on the dates:

a.  October 11, 2011,

b.  October 26, 2011

c.  November 3, 2011

d.  November 23, 2011

e.  December 6, 2011

f.  December 15, 2011

g.  January 23, 2012

h.  February 9, 2012, and

i.  March 8, 2012,

168.    Defendant Wacks did affirmatively, on each of these individual dates and in a pattern

spanning those dates, aggressively and intentionally oppose her own client's wishes,

and advocated for the issuance of the TRO, in violation of Ⅎ           's federally

guaranteed rights, who wished to be reunited freely with her father, and not be subject to constrained, supervised and state controlled visitation with her father.

169.  Due in substantial part to Defendant Wacks' efforts opposing her client's wishes and legal position, the restraining order was issued, causing prejudice to A .

170.  Defendant Wack's antipathetical prosecution of her client's representation in these hearings and all other , where her non-discretionary mandate was to represent her client's wishes, is a matter of court record and self admission, revealing her continuing intent and pattern to deny A  her legal rights and entitlements, based upon Wacks' stated discriminatory intents. Not once did Wacks even ever convey A  's wishes to the court as is required by law.

171.  Additionally, Defendant Wacks in these proceedings was in conspiracy with the instant Ulster County Department of Social Services Defendants, see above, in denying Plaintiff Ben Gary's federal rights, the denial of which was detailed supra, see Facts Pertinent to Defendants Dept of Social Services (DSS) Defendants, paragraph 23, et. seq.

## ENUMERATED COUNTS OF LIABILITY

### THE AMERICANS WITH DISABILITIES ACT &
### THE REHABILITATION ACT OF 1973

Congress enacted the ADA in 1990, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. 12101(b)(1). It found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. 12101(a)(2).

For those reasons, Congress prohibited discrimination against individuals with disabilities by public entities: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132.

Additionally, under the amendments made via the Americans with Disabilities Amendments Act (ADAAA) in 2008, discrimination against individuals who are regarded as or perceived to have a disability are covered under the Act as well.

Title II of the ADA covers activities of State and local governments, and requires that these entities give people with disabilities an equal opportunity to benefit from all of their programs, services, and activities (e.g. public education, employment, transportation, recreation, health care, social services, courts, voting and town meetings).

State and local governments facilities are required to make reasonable modifications to policies, practices, and procedures where necessary to avoid discrimination, unless they can demonstrate that doing so would fundamentally alter the nature of the service, program or activity being provided.

Under Title III of the ADA Congress also prohibited discrimination against individuals with disabilities by private entities who provide a public accommodation or service, codified at 42 U.S.C. 12182.

The U.S. Rehabilitation Act of 1973, Section 504, prohibits discrimination on the basis of disability in programs conducted by federal agencies, and in any state agency administering programs receiving Federal financial assistance. The standards for citing and addressing discrimination under the Rehabilitation Act are the same as those used in the Americans with Disabilities Act.

Plaintiff Anya Epiphany Cayley Treistman is a "qualified individual with a disability" within the meaning of the ADA and the RA in that she has a mental impairment that substantially limits one or more major life activities OR that she is "being regarded as having such an impairment", as per 42 U.S.C. 12102(1)(A), 12102(1)(C) & 12102(3)(A).

COUNT I

## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

### 42 U.S.C.  12182 et seq.

172.  The factual allegations of Paragraphs 102 through 171 of this Complaint are hereby realleged and incorporated by reference.

173.  Defendant Valerie Lyn Wacks, in the capacity of a private entity who owns and operates a place of public accommodation and who offers services to the public from that place, specifically an office of an attorney, as defined by 42 U.S.C. 12181(7)(F), did violate Title III of the ADA, by discriminating against and denying Plaintiff Anya E the full and equal services and privileges due to her, to wit legal services and representation, on the basis of A         disability or perceived disability, as per 42 U.S.C. 12102(1)(A, C), & 12102(3)(A), as it is generally prohibited under 12182(a, b(1)), and as it is specifically prohibited under 12182(b)(2)(A).

174.  And where A         is a person who is a person who either has a disability or is being treated as person with a perceived disability; and where A         alleged disability did not alter the nature of the services she was entitled to receive.

175.  And where the explicit statements issued by and actions effected by Wacks evidenced the discrimination against and exclusion of A         from equal treatment and services on the basis of disability. Specifically that since Wacks believed A         had a disability, Wacks would deny her representation of her wishes in court, and generally in the case.

176.    And pursuant to that discriminatory intent and unequal treatment, Wacks did deny A

         the rights, privileges and duties owed to her of effective legal representation and

         counsel, by the refusal to represent and advocate A      's wishes and desires in court

         where she was a party to an action.

177.    And consequent to that denial A       did suffer the denial of legal services, on the basis

         of disability, and Wacks did prevent A      from receiving her constitutional rights

         under both the United States and New York State constitutions including the right to

         access the courts, the right to counsel, the right to equal protection, the right to due

         process, the right to free speech, the right to free association, the right to be free of

         discriminatory treatment, and the right to parent-child association and non-interference

         thereon.

178.    And proximate to these denials, A      suffered emotional distress and grief from being

         denied access to and associations with her father, as well as presumed and per se damages

         consequent to being denied such association.

179.    And where Wacks owed a legal duty to A      , that was withheld on the basis of

         disability, and made no accommodations to preserve A      's rights and owed duty.

180.    The services Wacks provides to the public, and to which A      was entitled to receive

         include legal services pursuant to 22 NYCRR Rule 7.2 and Section 241 of the Family

         Court Act.

181.    Rule 7.2(d) requires Wacks to provide zealously advocate the child's position.

182.    Rule 7.2(d)(1) requires Wacks to ascertain the child's position, by consulting with and

         advising the child to the extent of and in a manner consistent with the child's capacities.

183. Rule 7.2(d)(2) requires that Wacks should be directed by the wishes of the child, even if the attorney for the child believes that what the child wants is not in the child's best interests.

184. Rule 7.2(d)(3) explains that when the attorney for the child is convinced either that the child lacks the capacity for knowing, voluntary and considered judgment, or that following the child's wishes is likely to result in a substantial risk of imminent, serious harm to the child, the attorney for the child would be justified in advocating a position that is contrary to the child's wishes. In these circumstances, the attorney for the child must inform the court of the child's articulated wishes if the child wants the attorney to do so, notwithstanding the attorney's position.   Defendant Wacks refused to comply with Rule 7.2(d)(1) and (d)(2) solely because of An    s disability or perceived disability.

185. Defendant Wacks did not have reasonable or verifiable basis as an initial matter to make a pre-emptive determination that An    was incapable of expressing her wishes, and for Wacks to refuse the advocacy of those wishes.

186. Additionally and subsequently, Defendant Wacks was made aware and knew, or should have known, that Anya E had the capacity for knowing, voluntary, and considered judgment as to her own legal wishes, because Wacks was in receipt of the reports of Dr. Steven Silverman, and Dr. Kathleen Caproni, both licensed psychologists, that verified that A    "is clearly able to express her wishes."

187. Furthermore, in deviating from A    's express wishes, Defendant Wacks failed to inform the court of the child's articulated wishes as is required by regulation and statute and controlling precedent.

188.   Furthermore defendant Wack's used criteria and methods of administration that were discriminatory on the basis of disability or perceived disability, by (1) failing to assess properly the services and supports that would enable A₁     . to have full legal representation and services to her wishes presented to the judicial system, (2) failing to inform A.      ɔf her options and ability to have her case presented, and (3) allocating the resources provided to Defendant Wacks in a manner contrary to the desires of /        ˉ., but rather in contravention of her desires.

189.   Defendant Wacks did not maintain a reasonable basis for denying the right and services to A       based on her perceived disability, nor did Wack make any attempt of reasonable modification in policy, practice or procedure to accommodate said perceived disability so as to ensure Ar      s rights, privileges and owed duty.

190.   Defendant Wacks' denial of legal services on the basis of disability prevented A        ¿ from receiving her constitutional rights under both the United States and New York State constitutions including the right to access the courts, the right to counsel, the right to equal protection, the right to due process, the right to free speech, the right to association, the right to be free of discriminatory treatment, and the right to parent-child association and non-interference thereon.

191.   Defendant Wacks' actions constitute discrimination in violation of Title III of the ADA, 42 U.S.C. 12182, as well as its implementing regulations in Title 28 C.F.R. 36.104, 36.201, 36.202.

192.   A        ¿ suffered emotional distress and grief from being denied access to and associations with her father, she suffered a legally compromised circumstance and position in court

case, as well as presumed and per se damages consequent to being denied such association.

193.    WHEREFORE, Plaintiffs demand that this Court: (1) Enjoin Defendant Wacks from further withholding of legal services that comply with Rule 7.2, the Family Court Act, and constitutional law on the basis of A:    _'s perceived disability in violation of the Americans with Disabilities Act; (2) Declare and adjudge that Defendant Wacks violated the Americans with Disabilities Act and implementing regulations by failing to provide A:      with the services she was entitled to under Rule 7.2 and the Constitution; and (3) Any further relief that may be appropriate and just.

## COUNT II

## VIOLATIONS OF TITLE II OF THE ADA,

## 42 U.S.C.  12131 et seq.

194.    The factual allegations of Paragraphs 102 through 171 of this Complaint are hereby realleged and incorporated by reference.

195.    The NY Office of Attorneys for Children is considered to be a public entity subject to Title II of the ADA, 42 U.S.C. 12131(1).

196.    The New York State Office of Attorneys for Children provides legal services to children in Family Court proceedings and Supreme Court custody matters. More than 700 attorneys in private practice are designated by the Appellate Division as members of county panels, and are then appointed by Family Court Judges and Supreme Court Justices to represent children on a case-by-case basis.

197.    Defendant Valerie Lyn Wacks ("Wacks") is a member of the county panel and is
        appointed to provide services to clients by the courts pursuant to the Office of Attorneys
        for Children (OAC) program, New York Supreme Court, Appellate Division, Third
        Judicial Department.

198.    Wacks' services are provided without substantial oversight and she alone is responsible
        for the operation and administration of her division of the public entity she is a member,
        agent and designee of.

199.    Wacks is responsible for operation of a local arm of a public entity, pursuant to 42 U.S.C.
        12131(1)(A) & (B), as to all cases assigned to her under that OAC designation.
        Regulations implementing Title II of the ADA require that a public entity administer its
        services, programs and activities in "the most integrated setting appropriate" to the needs
        of qualified individuals with disabilities.  28 C.F.R.  35.130(d).

200.    The ADA's implementing regulations further provide that "a public entity may not,
        directly or through contractual or other arrangements, utilize criteria or other methods of
        administration: (i) that have the effect of subjecting qualified individuals with disabilities
        to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of
        defeating or substantially impairing accomplishment of the objectives of the entity's
        program with respect to individuals with disabilities ."  28 C.F.R.  35.130(b)(3).

201.    As part of the services Wacks provides and is paid for as a county member of the Office
        of Attorneys for Children, and which A       is to receive include legal services pursuant
        to 22 NYCRR Rule 7.2 and Section 241 of the Family Court Act.

202.    Rule 7.2(d) requires Wacks to provide zealously advocate the child's position.

203.  Rule 7.2(d)(1) requires Wacks to ascertain the child's position, by consulting with and advising the child to the extent of and in a manner consistent with the child's capacities.

204.  Rule 7.2(d)(2) requires that Wacks should be directed by the wishes of the child, even if the attorney for the child believes that what the child wants is not in the child's best interests.      Rule 7.2(d)(3) explains that when the attorney for the child is convinced either that the child lacks the capacity for knowing, voluntary and considered judgment, or that following the child's wishes is likely to result in a substantial risk of imminent, serious harm to the child, the attorney for the child would be justified in advocating a position that is contrary to the child's wishes. In these circumstances, the attorney for the child must inform the court of the child's articulated wishes if the child wants the attorney to do so, notwithstanding the attorney's position.      Defendant Wacks refused to comply with Rule 7.2(d)(1) and (d)(2) solely because of A      ‾'s perceived disability.

205.  Defendant Wacks was made aware and knew, or should have known, that Anya E had the capacity for knowing, voluntary, and considered judgment because she received the reports of Dr. Steven Silverman, and Dr. Kathleen Caproni, both licensed psychologists, that verified that Anya E "is clearly able to express her wishes."

206.  Furthermore, in deviating from A      's express wishes, Defendant Wacks failed to inform the court of the child's articulated wishes as is required by regulation and statute.

207.  Defendant Wack's used a criteria and a methods of administration that subjected A on the basis of disability or perceived disability by (1) failing to assess properly the services and supports that would enable A      to have full legal representation and her wishes presented to the judicial system, (2) failing to inform A      ; of her options and ability to have her case presented, and (3) allocating the resources provided to Defendant

Wacks in a manner contrary to the desires of A         ., but rather in contravention of her

desires.

208.    Defendant Wacks did not maintain a reasonable basis for denying the right and services to

A.      based on her perceived disability.

209.    In addition, Defendant Wacks' denial of legal services on the basis of disability prevented

A _    ? from receiving her constitutional rights under both the United States and New

York State constitutions including the right to access the courts, the right to counsel, the

right to equal protection, the right to due process, the right to free speech, the right to

association, the right to be free of discriminatory treatment, and the right to parent-child

association and non-interference thereon.

210.    Defendant Wacks' actions constitute discrimination in violation of Title II of the ADA, 42

U.S.C. 12132, as well as its implementing regulations at 28 C.F.R. pt. 35.

211.    A1     ` suffered emotional distress and grief from being denied access to and association

with her father, she suffered a legally compromised circumstance and position in court

case, as well as presumed and per se damages consequent to being denied such

association.

212.    WHEREFORE, Plaintiffs demand that this Court: (1) Enjoin Defendant Wacks from

further withholding of legal services that comply with Rule 7.2, the Family Court Act,

and constitutional law on the basis of A        ᴗ's perceived disability in violation of the

Americans with Disabilities Act; (2) Declare and adjudge that Defendant Wacks violated

the Americans with Disabilities Act and implementing regulations by failing to provide

A1      with the services she was entitled to under Rule 7.2 and the Constitution; and (3)

Any further relief that may be appropriate and just.

## COUNT III

## VIOLATIONS OF THE REHABILITATION ACT of 1973

213.    The factual allegations of Paragraphs 102 through 171 of this Complaint are hereby

realleged and incorporated by reference, and the charging allegations of Counts I & II.

214.    The State of New York, and in turn, Defendant Wacks who receive funds as an agent and

county agent or member of New York's Office of the Attorney for Children, as a recipient

of federal financial assistance, is subject to the Rehabilitation Act, 29 U.S.C. 794.

215.    Discrimination on the basis of disability is also prohibited by Section 504 of the

Rehabilitation Act, 29 U.S.C. 794(a):  No otherwise qualified individual with a disability

in the United States  shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving federal financial assistance or under any program or

activity.

216.    Plaintiff A        is a person with a defined disability covered by the Rehabilitation Act

and she is qualified to receive legal services from programs, or activities from the State

and Wacks, as county member and agent of the State, specifically the services found in

Rule 7.2 of the NYCRR, the Family Court Act, and the common law right to legal

representation.

217.    Defendant Wacks violated the Rehabilitation Act and discriminated against a qualified

individual with a disability within the meaning of the Rehabilitation Act by administering

legal programs and activities receiving federal financial assistance in a manner that

denied A        the benefits of such programs or activities and by failing to reasonably

modify the State's mental health services system to avoid discrimination against A

29 U.S.C. 794(a).

218. Specifically, on the basis of A        's disability, and despite knowing that Drs. Silverman

and Caproni, both licensed psychologists, reported that Ar        maintained the ability and

capacity to receive the services, refused to convey A        's wishes to the Court and

refused to zealously advocate for Anya E's desired outcome.

219. Defendant Wacks' actions constitute discrimination in violation of Section 504 of the

Rehabilitation Act, 29 U.S.C. 794, and its implementing regulations.

220. A        suffered emotional distress and grief from being denied access to and associations

with her father, she suffered a legally compromised circumstance and position in court

case, as well as presumed and per se damages consequent to being denied such

association.

221. WHEREFORE, Plaintiffs demand that this Court: (1) Enjoin Defendant Wacks from

further withholding of legal services that comply with Rule 7.2, the Family Court Act,

and constitutional law on the basis of A        's perceived disability in violation of the

Rehabilitation Act; (2) Declare and adjudge that Defendant Wacks violated the

Rehabilitation Act and implementing regulations by failing to provide A    E with the

services she was entitled to under Rule 7.2; (3) Award damages in an amount to be

proven at trial; and (4) Grant any further relief that may be appropriate and just.


## COUNT IV

### LEGAL MALPRACTICE

The factual allegations of Paragraphs 102 through 171 of this Complaint are hereby realleged and incorporated by reference.

222.    Defendant Valerie Lyn Wacks failed to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession, in violation of New York Bar Association rules, Rules of the Chief Judge of New York, and other related rules, laws and regulations.

223.    Specifically, she failed to advocate for her client, A      E, and the legal interests of her client and, instead, argued against the position and wishes of her client in contravention of regulations governing her appointment.

224.    These breaches of duty to A      E and to conduct required by the legal profession, include, but are not limited to, the following acts of malpractice:

   a.    Defendant Wacks failed to consult with and advise A    ι E of the options available to her in both Wacks' representation, and in the legal proceedings.

   b.    Defendant Wacks did not explain her role and obligations in representing and advocating A.    E's wishes.

   c.    Defendant Wacks did not convey Aι     E's wishes to the court, or any deviations thereof.

   d.    Defendant Wacks shared privileged information with other parties and counsel that A    . E explicitly stated to her that she wanted kept confidential.

   e.    Defendant Wacks did individually, under oath and to the court, affirmatively misrepresent statements made by A    . E, both orally and by sworn affidavit,  that

were substantively opposite of what A     E had said, and in contradiction of her wishes and beliefs.

    f.    Defendant Wacks did further, in concert and conspiracy with Defendant Lawrence Shelton, misrepresent statements made by A     E to the court, both orally and by sworn affidavit, that were substantively false, and were opposite in both meaning and statement of what A     E had said, and in contradiction of her wishes and beliefs, and in antitheses of the legal position A     E had wished to be advocated in court.

    g.    Furthermore, in contradiction of her client's explicit stated wishes and direction to have her father Ben Gary included and a part of her legal litigation, Defendant Wacks refused to confer, cooperate, share or consult A     E's legal strategy with A     E's father; against her client's wishes Wacks affirmatively and explicitly prohibited her father from speaking to A     E about any of her legal strategy, desires, litigation wishes or intentions.

225.    The negligence of Defendant Wacks was the proximate cause of A     E losing her legal rights, not having a voice in court, and not receiving the relief that she desired.

226.    Specifically, A     E's request to have expanded visits with her father and to have her father have primary custody, were not advocated for, and have not been conveyed to the courts.

227.    On the contrary, Defendant Wacks actually argued to the court against her client's position in an effort to limit visitation, deny custody, and encourage impositions and enhancements of restraining orders between them.

228.   Plaintiff A   incurred actual damage as a result of Defendant Wacks' failure to
advocate for her position and by not advising the courts of A   's position.

229.   Specifically, A   has received reduced time and association with her Father, has not
had unmonitored visitation, has had her legal position for preferred custody with her
father irretrievably compromised, lost and dismantled, among other things, as a proximate
result of the failure of Defendant Wacks to advance the legal position of A   and to
instead argue against it.

230.    WHEREFORE, Plaintiffs demand that this Court: (1) Enjoin Defendant Wacks from
further withholding of legal services that comply with Rule 7.2, the Family Court Act,
and constitutional law and to advocate for the position of A   .; (2) Declare and
adjudge that Defendant Wacks committed and continues to commit legal malpractice by
failing to provide A   with the services she was entitled to under Rule 7.2, the Family
Court Act, and constitutional law; and (3) Any further relief that may be appropriate and
just.

### Conspiracy to Interfere with Civil Rights

Title 42 USC 1985(3), provides that:

"If two or more persons in any State or Territory conspire . . . . for the purpose of depriving,
either directly or indirectly, any person or class of persons of the equal protection of the laws, or
of equal privileges and immunities under the laws; [. . . . . . .] in any case of conspiracy set forth
in this section, if one or more persons engaged therein do, or cause to be done, any act in
furtherance of the object of such conspiracy, whereby another is injured in his person or property,
or deprived of having and exercising any right or privilege of a citizen of the United States, the

party so injured or deprived may have an action for the recovery of damages occasioned by such

injury or deprivation, against any one or more of the conspirators."

Furthermore, Title 42 USC 1985(2) provides in pertinent part:

"[If] two or more persons conspire for the purpose of impeding, hindering, obstructing, or

defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to

any citizen the equal protection of the laws, or to injure him or his property for lawfully

enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal

protection of the laws;"


## COUNT V

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

## 42 USC 1985(3)


231.  The factual allegations of Paragraphs 59 through 70, and 165 through 171 of this

Complaint are hereby realleged and incorporated by reference.

232.  Defendant Wacks did conspire with Defendants Kelly Whittaker, Amy Greene, Elisabeth

Krisjanis, Esq., and Jillian Jackson, Esq., individually with each and in concert with all,

to deny Plaintiff Ben Gary his federal and state rights, on the basis of his gender, which

include but are not limited to, the right to be free of gender discrimination and the right to

equal opportunity to parent his child (14th Amend US Const), as detailed and itemized

under Counts (counts alleging pattern of gender discrimination, NYHRL on my crim

history) herein.

233.    Furthermore Wacks did conspire with Defendants Kelly Whittaker, Amy Greene, Elisabeth Krisjanis, Esq., Jillian Jackson, Esq., individually with each and in concert with all and Denise Woltman to deny Ar    's federal and state rights which include but are not limited to the right to be free from disability discrimination as detailed and itemized under Counts [counts that demonstrate denial of anyas rights based upon disability] herein.

234.    Proximate to Wacks' involvement in this conspiracy, both Plaintiffs suffered damages and injury, by being forcibly and involuntarily taken away from each other, and suffered extreme and continual emotional distress, alienation of affections, grief and anguish at the loss of each other's company, and other injuries and damages.

## COUNT VI(a)

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

## 42 USC 1985(3)

235.    The factual allegations of Paragraphs 151 through 160 of this Complaint are hereby realleged and incorporated by reference.

236.    Between June 2011, and August 2011, Defendant Lawrence Shelton did conspire with Defendant Valerie Lyn Wacks, to deny A    . her right to access to courts (1st Amend US Const) and effective counsel (6th Amend US Const) and substantive due process (5th Amend US Const), on the motivated by reason of alleged disability, by submitting on August 18, 2011, under oath, and to the court, misrepresented statements ascribed to

A:         , both orally and by sworn affidavit,  that were substantively opposite of what

A.         had said, and in contradiction of her wishes and beliefs.

237.   Defendant Lawrence Shelton, in concert and conspiracy with Defendant Wacks, did

further misrepresent statements made by A,       E to the court, both orally and by sworn

affidavit, that were substantively false, and were opposite in both meaning and statement

of what A         had said, and in contradiction of her wishes and beliefs, and in antitheses

of the legal position A        ; had wished to be advocated in court.

238.   These actions were in furtherance of the scheme that Valerie Lyn Wacks effected to deny

A,     _ her constitutional rights directly, as well as on the basis of disability or perceived

disability; specifically the rights of access to courts, effective counsel, substantive due

process, of equal protection and free association and to parent-child familial association

(14th Amend US Const).

239.   A.      ; was harmed by this action, by having sought visitation with her father denied, her

wish for custody under her father undermined, and her legal case irreparably

compromised. This lead to much emotional distress, loss of parent child consortium, grief

and breach of parent child association and enjoyment.


# COUNT VI(b)

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

### 42 USC 1985(2)


240.   The factual allegations of Paragraphs 151 through 160 of this Complaint are hereby

realleged and incorporated by reference.

241.  Between June 2011, and August 2011, Defendant Lawrence Shelton did conspire with
      Defendant Valerie Lyn Wacks, for the purpose of impeding, hindering, obstructing, or
      defeating Plaintiff A      the due course of justice, with intent to deny her the equal
      protection of the laws (14th Amend US Const) in both procedural and substantive due
      process (5th Amend US Const), specifically by having put forth on August 18, 2011,
      under oath, and to the court, misrepresented statements ascribed to A         both orally
      and by sworn affidavit, that were substantively opposite of what A        had said, and in
      contradiction of her wishes and beliefs.

242.  And in doing so, denied her right to access to courts, effective counsel, on the motivated
      by reason of alleged disability, and other reasons.

243.  Defendant Lawrence Shelton, in concert and conspiracy with Defendant Wacks, did
      further misrepresent statements made by A        to the court, both orally and by sworn
      affidavit, that were substantively false, and were opposite in both meaning and statement
      of what A     had said, and in contradiction of her wishes and beliefs, and in antitheses
      of the legal position A      had wished to be advocated in court.

244.  Both co-conspirators did thusly succeed in impeding, hindering, obstructing, or defeating
      the court case proceeding, presentation and wishes in the court case that A        was
      entitled to.

245.  These actions were in furtherance of the scheme that Valerie Lyn Wacks effected to deny
      A      her constitutional rights directly, as well as on the basis of disability or perceived
      disability; specifically the rights of access to courts (1st Amend US Const), effective
      counsel (6th Amend US Const), substantive due process (5th Amend US Const), equal

Page 57 of  89

protection (14th Amend US Const), of free association (1st Amend US Const) and to

parent-child familial association (14th Amend US Const).

246.    A _    was harmed by this action, by having sought visitation with her father denied, her

wish for custody under her father undermined, and her legal case irreparably

compromised, as well as suffering emotional distress, loss of parent child consortium,

alienation of affections and company, and other injuries.


## COUNT VII

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT,

## 42 U.S.C §§12131 et seq.


247.    The factual allegations of Paragraphs 91 through 95 of this Complaint are hereby

realleged and incorporated by reference, and the charging allegations of Counts I & II.

248.     Where Aı _    is a person that falls under the definition of a disabled person or perceived

disabled person under the ADA, and where Mary Ellen Schneider acting as an employee

of Ulster County Mental Health Department, a public entity, acting individually and in

concert with other Ulster County employees and defendants, did discriminate against

Aı      on the basis of disability or perceived disability.

249.    And where Schneider owed a duty to provide services to A    ı, and where Schneider did

not make any reasonable accommodations or efforts in consideration for A⁻       : alleged

disability.

250.    Schneider violated A     s ADA right to be free of discrimination, by directing and

demanding, to both Plaintiffs A        and Ben Gary, that Aː     ᷓ be prohibited from

speaking about legal or court matters, future visits or past experiences with her father,

against A      :'s wishes and intent, on the basis of disability, asserting that such

conversation and speech was not permissible on the basis of disability, and in doing so

did prevent A      ₤ from having free association and parent/child familial association

with her father.

251.   By doing so, Schneider further discriminated by denying A      :'s rights and privileges to

access to courts, freedom of speech, freedom of association, and freedom from

parental/child association interference, on the basis of disability or perceived disability.

252.   A     ₤ suffered emotional distress, grief and per se damages by violation of her

parent-child familial association, and the continuing denial of company with her father.


### COUNT VIII

### VIOLATIONS OF THE REHABILITATION ACT of 1973


253.   The factual allegations of Paragraphs 91 through 95 of this Complaint are hereby

realleged and incorporated by reference, and the charging allegations of Counts I & II..

254.   Where A₁     is a person that falls under the definition of a disabled person under the

ADA or perceived disabled person, and where Mary Ellen Schneider acting as an

employee of Ulster County Mental Health Department, a public entity that receives

federal funding, acting individually and in concert with other Ulster County employees

and defendants, did discriminate against A       on the basis of disability or perceived

disability.

255.   And where Schneider owed a duty to provide services to A        , and is subject to the Rehabilitation Act, 29 U.S.C. 794, and where Schneider did not make any reasonable accommodations for Anya E.

256.   Schneider violated A:  :'s ADA right to be free of discrimination, by directing and demanding, to both Plaintiffs A        and Ben Gary, that A:       : be prohibited from speaking about legal or court matters, future visits or past experiences with her father, against A:      :'s wishes and intent, on the basis of disability, asserting that such conversation and speech was not permissible on the basis of disability, and in doing so did prevent A     E from having free association and parent/child association with her father.

257.   By doing so, Schneider further discriminated by denying A       s rights and privileges to access to courts, freedom of speech, freedom of association, and freedom from parental/child association, on the basis of disability or perceived disability.

258.   A      ` suffered emotional distress, grief and per se damages by violation of her parent-child familial association, and the continuing denial of company with her father.


## COUNT IX

### Violations of Plaintiffs' Constitutional Rights and other Rights

### 42 USC 1983


259.   The factual allegations of Paragraphs 91 through 95 of this Complaint are hereby realleged and incorporated by reference.

260.   As provided for by 1983, Mary Ellen Schneider, a person acting under color of state law, violated Plaintiffs A₁     and Ben Gary constitutional rights of access to courts, freedom of speech, and freedom of association (1st Amend US Const), and right to parent-child association (14th Amend US Const).

261.   Between May of 2012, and January 2013, Mary Ellen Schneider, a person acting under color of state law,  acted to effect the denial of these rights, by demanding to both Plaintiffs, as prerequisite to lifting of constraints, that the effectuation of these rights be prohibited, to which Plaintiffs involuntarily acceded to, as detailed in paragraphs 83(b-c) & 91.

262.   Specifically, Schneider violated Plaintiff's rights by directing and demanding, to both Plaintiffs Anya E and Ben Gary, individually and together, that the Plaintiffs be prohibited from speaking with each other about legal or court matters, future visits or past experiences with her father, against A₁     's wishes and intent, asserting that such conversation and speech was not permissible, and in doing so Schneider would take knowing action to prohibit and prevent A·     .   and Ben Gary from having free association, speech with each other, and parent/child associations with each other.

263.   By doing so, Schneider further discriminated by denying A     ₁'s rights and privileges to access to courts, freedom of speech, freedom of association, and freedom from interference of parental/child association.

264.   Plaintiffs have each suffered emotional distress, and the continuing denial of each other's company due to Schneider's actions.

## COUNT X

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

### 42 USC 1985(3)

265.   The factual allegations of Paragraphs 91 through 95 of this Complaint are hereby

   realleged and incorporated by reference.

266.    Mary Ellen Schneider violated A       and Ben Gary constitutional rights of access to

   courts, freedom of speech, freedom of association, and right to parent-child association.

267.   Between May of 2012, and January 2013, Mary Ellen Schneider, a person acting under

   color of state law, acting in concert and in conspiracy with Defendants Denise Woltman,

   Charlene Boswell, and other unknown named persons, also acting under color of law, as

   agents and employees of Ulster County Child Protective Services, acted to effect the

   denial of these rights, by demanding as a prerequisite to lifting of constraints, that the

   effectuation and free expression of these rights be prohibited, to which Plaintiffs

   involuntarily acceded, as detailed in paragraphs 83(b-c) & 91.

268.   Specifically as detailed above, denying A      's rights and privileges to access to courts,

   freedom of speech, freedom of association (1st Amend US Const), and freedom from

   interference of parental/child association (14th Amend US Const).

269.   And denying Ben Gary's rights and privileges in his freedom of speech, freedom of

   association, and freedom from interference of parental/child familial association.

270.   Plaintiffs have suffered emotional distress, and the continuing denial of each other's

   company due to Schneider's actions.

### COUNT XI

## VIOLATIONS OF PRIVACY

271.  Between May of 2012, and January 2013, Defendant Mary Ellen Schneider did violate
her duty to Ben Gary to keep privileged medical and therapeutic information and
communications private and privileged, as per duties under federal HIPAA and state rules
under NYCPLR 4504, et seq, by releasing to third parties, specifically Ulster County
Child Protective Services and Denise Woltman, and other unknown named persons,
without adhering to the terms of authorization or permission from Ben Gary; Ben Gary's
authorization of release explicitly required previous or concurrent release of said
information to Plaintiff Ben Gary before any release to third parties, so as to verify its
accuracy and amend if necessary, as were the explicit terms of his authorization to share
such information.

272.  This disclosure resulted in inaccurate, privileged, misleading or incomplete information
being conveyed with no opportunity to correct, and was used to further deny visits and
association between Ben Gary and his daughter A      E, causing obstruction of their
parent/child interaction, and causing emotional distress.

## COUNT XII

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

### 42 U.S.C. §§12131

273.  Paragraphs 75 to 80 are incorporated by reference herein.

274.   Defendants Denise Woltman, Charlene Boswell, and other unknown named persons,
       acting as agents and employees of Ulster County Child Protective Services, a public
       entity that provides services to the general public, and upon Aɪ        being a person who
       was qualified to receive such services, the Defendants acting individually and in concert
       with other Ulster County employees and defendants, did discriminate against Aɪ    ¯ on
       the basis of disability or perceived disability.

275.   Woltman and  Boswell violated A        's ADA right to be free of discrimination, by
       directing and demanding, to both Plaintiffs A:       ⅃ and Ben Gary, that Anya E be
       prohibited from speaking about legal or court matters, future visits or past experiences
       with her father, against A        's wishes and intent, on the basis of disability, asserting
       that such conversation and speech was not permissible on the basis that due to A      's
       alleged disability she should be denied these topics of speech and association, and in
       doing so did prevent A.       from having free association and parent/child association
       with her father.

276.   By doing so, Woltman and  Boswell  further discriminated by denying Anya's rights and
       privileges to access to courts, freedom of speech, freedom of association, and freedom
       from parental/child association interference, on the basis of disability or perceived
       disability.

277.   These actions caused A       emotional distress, confusion, fear and per se damages by
       interference of parental/child association, and communications between them.


## COUNT XIII

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

42 U.S.C. §§12131

278.   Paragraphs 75 to 80 are incorporated by reference herein.

279.   Defendants Denise Woltman, Charlene Boswell, and other unknown named persons,

acting as agents and employees of Ulster County Municipality, a public entity that

provide services to the public, did violate Ar     's right to be free of discrimination on

the basis of disability or perceived disability; where A     is a person who has a

qualified disability or is perceived to have a disability, and who is entitled to receive

services and benefits from the Defendants, and where said defendants did not provide an

accommodation to take into consideration said disability or perceived disability.


280.   Specifically, on or about January 18, 2012, at a visit re-scheduled by Denise Woltman,

but not noticed to Ben Gary, see paragraphs 74 to 79, Ar     expressed sadness and

anger at not seeing her father.

281.   Woltman, Boswell and other Unknown Named Persons, in response to A     's

aforementioned reaction and based on disability or perceived disability, did subsequently

deny her further visits outside of the CPS facility, and discriminated against her on the

basis of disability or perceived disability by downgrading her visitation amenities, status,

opportunities and freedoms.

282.   The defendants did not make any accommodation or reasonable modification to their

policy or procedure in order to preserve her rights and not be treated disparately.

283.   Denise Woltman violated A₁ ‚ 3's rights, by treating her differently, and by effectively

punishing her for emotional distress and grief based upon disability or perceived

disability.


## COUNT XIV

## VIOLATIONS OF THE REHABILITATION ACT of 1973


284.   Paragraphs 75 to 80 are incorporated by reference herein.

285.   Defendants Denise Woltman, Charlene Boswell, Ulster County Child Protective Services,

and Ulster County Municipality, and other unknown named persons, are recipients of

federal financial assistance, and subject to the Rehabilitation Act, 29 U.S.C. 794.

286.   Discrimination on the basis of disability is also prohibited by Section 504 of the

Rehabilitation Act, 29 U.S.C. 794(a): No otherwise qualified individual with a disability

in the United States  shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving federal financial assistance or under any program or

activity.

287.   Plaintiff A·     is a person with a defined disability covered by the Rehabilitation Act

and she is qualified to receive services, programs, or activities from the defendants cited

in this paragraph.

288.   Defendant Denise Woltman and Charlene Boswell, Ulster County Child Protective

Services, Ulster County Municipality, and other unknown named persons, violated the

Rehabilitation Act and discriminated against a qualified individual with a disability, or

perceived disability, within the meaning of the Rehabilitation Act by administering legal

programs and activities receiving federal financial assistance in a manner that denied

A        the benefits of such programs or activities and by failing to reasonably modify the

Child Protective Services system to avoid discrimination against A      ,, 29 U.S.C.

794(a).

289.   Defendants Denise Woltman, Charlene Boswell, and other unknown named persons,

acting as agents and employees of Ulster County Municipality, a public entity that

receives federal funding, did violate A        's right to be free of discrimination on the

basis of disability or perceived disability.

290.   Specifically, on or about January 18, 2012, at a visit re-scheduled by Denise Woltman,

but not noticed to Ben Gary, see paragraphs 74 to 79, A        ; expressed sadness and

anger at not seeing her father.

291.   Woltman, Boswell and other Unknown Named Persons, based upon A        's

aforementioned reaction and on disability or perceived disability, did subsequently deny

her further visits outside of the CPS facility, and discriminated against her on the basis of

disability or perceived disability by downgrading her visitation amenities, status,

opportunities and freedoms.

292.   The defendants did not make any accommodation or reasonable modification to their

policy or procedure in order to preserve her rights and not be treated disparately.

293.   Denise Woltman, Boswell and other Unknown Named Persons violated A        's rights,

by treating her differently, and by effectively punishing her for expression and reaction of

grief, and premised that treatment upon A        's disability or perceived disability.

## COUNT XV

## VIOLATIONS OF CONSTITUTIONAL GUARANTEES AND RIGHTS,

## TITLE 42 USC 1983

294.   The factual allegations of Paragraphs 82 through 87 of this Complaint are hereby

realleged and incorporated by reference.

295.   From January 2012 to December 2012, and of a continuing nature, Defendants Denise

Woltman, Charlene Boswell, and other unknown named persons, acting as agents and

employees of Ulster County Child Protective Services, and acting under color of state

law, did violate Plaintiffs right under the state and federal constitutions, by directing and

demanding, to both Plaintiffs A        and Ben Gary, that the Plaintiffs be prohibited from

speaking about legal or court matters, future visits or past experiences with her father,

against A.     's wishes and intent, asserting that such conversation and speech would not

be permitted, further the defendants prohibited Ben Gary from taking photos of his

daughter or videography of his daughter; these prohibitions were under threat of complete

enforced disassociation between the Plaintiffs, and in doing so did would prevent the

Plaintiffs from having free association and parent/child association with her father, and

causing extreme emotional distress to both Plaintiffs by these strictures.

296.   Said actions of these defendants did violate specifically Plaintiffs rights and privileges of:

a.      The right of access to courts, and the free conversation or planning thereof

b.    (1st Amend US Const);

c.    The right to equal protection (14th Amend US Const);

d.    The right to free speech (1st Amend US Const);

e.    The right to free association (1st Amend US Const);

f.    The right to parent-child familial association and non-interference thereon (14th Amend US Const);

g.    The right to plan or coordinate their lives together for the present and for the future, enjoyment of reminiscence of past experiences, or prepare legal proceedings together (1st and 14th Amend US Const).

h.    The right to free expression (1st Amend US Const);

i.    The right to practice, discuss and contemplate upon their religion without interference (1st Amend US Const).

297.    Due to the violations of these rights, and the forced separation caused by the Defendants, that had no basis in law, both Plaintiffs have suffered from continual and severe emotional distress, mental anguish, depression, grief and loss of parent-child consortium.

## COUNT XVI

## VIOLATIONS OF CONSTITUTIONAL GUARANTEES AND RIGHTS, TITLE 42 USC 1983

298.    Defendants Ulster County Child Protective Services, and Ulster County Municipality, entities acting under color of state law, are liable for not properly training educating,

instructing, informing, or advising Denise Woltman, Charlene Boswell, Amy Greene, Kelly Whittaker and other unknown named persons, that demanding the suspension of guaranteed legal rights and privileges is a violation of Plaintiff's constitutional and other rights, and a legal privilege that is inviolate, and cannot be a target of prohibition.

299.    Defendants Ulster County Child Protective Services, and Ulster County Municipality's failure to properly train, educate, instruct, inform, or advise Denise Woltman, Charlene Boswell, Amy Greene, Kelly Whittaker and other unknown named persons, were proximate and contributory in the effectuation of the denial of the Plaintiffs' rights and privileges; these failures resulted in extreme emotional distress of the Plaintiffs, and were consequent to the Defendants' actions. Both Plaintiffs have suffered from continual and severe emotional distress, mental anguish, depression, grief and loss of parent-child consortium.

## COUNT XVII

## VIOLATIONS OF CONSTITUTIONAL GUARANTEES AND RIGHTS,
### TITLE 42 USC 1983

300.    Defendants Ulster County Child Protective Services, and Ulster County Municipality, entities acting under color of state law, are liable for failure to properly train Denise Woltman, Charlene Boswell, Amy Greene, Kelly Whittaker and other unknown named persons, as required by Chapter 525 of the Laws of 2006 (New York State), and codified in NYS Social Services Law 421, as well as failure to maintain the mandatory periodic training required therein.

301.   Due to this failure, Defendants Denise Woltman, Charlene Boswell, Amy Greene, Kelly Whittaker, and other unknown named persons, were sub-standardly educated or knowledgeable, or incompetant in the administration of their legal duties and obligations, leading to the counts of liability of the Plaintiffs, as detailed hereto and hereof in other counts, and the damages suffered by Plaintiffs.

302.   Defendants Ulster County Child Protective Services, and Ulster County Municipality's failure to properly train, educate, instruct, inform, or advise Denise Woltman, Charlene Boswell, Amy Greene, Kelly Whittaker and other unknown named persons, were proximate and contributory in the effectuation of the denial of the Plaintiffs' rights and privileges.

303.   These failures contributed to the defendants' improper administration of their duties and responsibilities, resulting in the denial of constitutional and other rights to the Plaintiffs; Plaintiffs suffered from forced isolation from each other, and extreme emotional distress, consequent to the Defendants' actions.

## COUNT XVIII

## VIOLATIONS OF CONSTITUTIONAL GUARANTEES AND RIGHTS, TITLE 42 USC 1983

304.   From November 2011 to December 2012, Defendants Ulster County Child Protective Services, and Ulster County Municipality, acting under color of state law, interfered with Plaintiffs' freedom of association (1st Amend US Const) and right to parent-child familial association (14th Amend US Const) by promulgating administrative rules of, and

the imposition of prohibiting the giving of gifts to each other. Said prohibition resulted in emotional distress and familial alienation and estrangement, and emotional distress to the Plaintiffs.

## COUNT XIX

## VIOLATIONS OF CONSTITUTIONAL GUARANTEES AND RIGHTS, TITLE 42 USC 1983

305.   Paragraphs 96 to 97 are incorporated here by reference.

306.   On December 19, 2012, Defendants Denise Woltman, and Charlene Boswell, acting under color of state law, interfered with Plaintiff Ben Gary's freedom of association rights and the right to parent without state interference, after accusing Ben Gary of pinching his child on the buttock, Woltman asserted that he did not have the right to discipline his child Anya E, in a manner within his discretion and permissible and protected by NY State law (NY Pen Law 35.10(1)), and other law, directing him not to effect said discipline even if it was within his legal discretion to do so, and that he thought appropriate, and threatening sanctions upon him, of further denial of association and visits with his child if he did exercise these rights and privileges under New York law, and furthermore in retaliation for the exercise and assertion of his rights demanded redundant, unnecessary and gratuitous parenting education classes' to "correct" his expression, beliefs and practice of those rights, as Ben Gary had already taken and completed a parenting class.

307.    Said prohibition exerted by the defendants interfered with Ben Gary's right to parent his

child (14th Amend US Const), affecting his free discretion to teach and inform his child,

and was contributory to denying his sharing of lessons and creed to his child (1st and 14th

Amend US Const), and grief in the loss of those entitlements, and loss of free assembly

and of parent child consortium.


## COUNT XX

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS


308.    Paragraphs 64-71 and 98-99 are incorporated by reference herein.

309.    Defendants Kelly Whittaker, Amy Greene, Elisabeth Krisjanis, Esq., and Jillian Jackson,

Esq. , acting under color of State Law, are liable for the negligent infliction of emotional

distress upon Plaintiffs Ben Gary and A.      under the laws of New York State and the

United States.

310.    These Defendants owed a duty of care to the Plaintiffs in the exercise of their

administration of child protective services.

311.    They negligently applied improper laws and improper standards as a premise to separate

and cause the Plaintiffs to be taken from each other, to date going on a year and a half.

312.    The Defendants knew, or should have known within their capacity as professionals and

experts in these fields, that the administrative and judicial charges they levied against Ben

Gary were insufficient as a matter of law.

313.    To the extent that they were ignorant of the laws and policies in their professional field,

Defendants Ulster County Municipality and Ulster County Child Protective Services are

liable for insufficiently training the natural person Defendants, and were contributory to the emotional distress.

314.    Due to the forced separation caused by the Defendants, that had no basis in law, both Plaintiffs have suffered from continual and severe emotional distress, mental anguish, depression, grief and loss of parent-child consortium.


## COUNT XXI

## VIOLATIONS OF CONSTITUTIONAL GUARANTEES AND RIGHTS,

## TITLE 42 USC 1983


315.    Paragraphs 58 to 71 are incorporated here by reference as if fully stated.

316.    On or about October 5, 2011, Defendants Kelly Whittaker, Amy Greene acting in person, and Elisabeth Krisjanis, Esq., Jillian Jackson, Esq., and Barbara Sorkin, acting by documents and submissions, who are all persons acting under color of State law, individually and in conspiracy with each other, did knowingly, intentionally, and culpably interfere, curtail, limit and control in violation of law, Ben Gary's lawful and retained rights and privileges to parent his child A       ..., commanding and prohibiting him from exercising his privileged and discretionary rights under federal and state law from parenting his child, as detailed and itemized, letters "a" through "s", in paragraph 63, which is incorporated by reference as if fully rewritten here.

317.    Specifically under threat of using state action to remove and separate the Plaintiffs from each other, by directing Ben Gary to, and demanding that Ben Gary obey and abide by their ad hoc rules and edicts.

318.  Additionally, the Defendants did in fact use their authority under of state law to effectuate the removal of Plaintiffs from each other, and under threat of criminal sanction prevented the Plaintiffs from having free association with each other.

319.  By these actions the Defendants did violate Plaintiffs' right, by denying them:

    a.  The right of access to courts, and the free conversation or planning thereof (1st Amend US Const);

    b.  The right to equal protection (14th Amend US Const);

    c.  The right to free speech (1st Amend US Const);

    d.  The right to free association (1st Amend US Const);

    e.  The right to parent-child familial association and non-interference thereon (14th Amend US Const);

    f.  The right to plan or coordinate their lives together for the present and for the future, enjoyment of reminiscence of past experiences, or prepare legal proceedings together (1st and 14th Amend US Const).

    g.  The right to free expression generally and with each other (1st Amend US Const);

320.  Due to the violations of these rights, and the forced separation of the Plaintiffs caused by the Defendants, that had no basis in law, both Plaintiffs have suffered from continual and severe emotional distress, mental anguish, depression, grief and loss of parent-child consortium.

321.    Additionally these actions in fact did negatively impact the custody Plaintiff had been

litigating for, by undermining any possible custody award with the sanction imposed by

the Defendants' actions.


## COUNT XXII

## VIOLATIONS OF CONSTITUTIONAL GUARANTEES AND RIGHTS,

## TITLE 42 USC 1983


322.    Defendants Kelly Whittaker, Amy Greene, Elisabeth Krisjanis, Jillian Jackson, Esq.,

Barbara Sorkin, Ulster County Child Protective Services/Ulster County Dept of Social

Services, Ulster County Municipality, and other unknown named Defendants did

knowingly, illegally and intentionally discriminate against Plaintiff Ben Gary Treistman

on basis of gender, as part of an ongoing conduct, practice and pattern of discrimination

against male parents in Ulster County, NY, by the disproportionate initiation of and

investigation, accusation and prosecution of male parents of children in child protective

actions and cases, disproportionately charging them more often then female parents, and

also for the discriminatory purpose of prejudicing men in retaining their parental rights

over their children compared to women, all in violation of equal protection and to be free

of private and governmental discrimination, as protected by the 14 Amendment of the US

Constitution, as well as by the New York State constitution.

323.    This discrimination is a per se injury to Ben Gary, but also led to the forced separation of

the Plaintiffs, that had no basis in law, and the damages suffered by continual and severe

emotional distress, mental anguish, depression, grief and loss of parent-child consortium.

## COUNT XXIII

## VIOLATIONS OF CONSTITUTIONAL GUARANTEES AND RIGHTS,

### TITLE 42 USC 1983

324.    Paragraphs 51 to 58 and et seq. are incorporated here by reference.

325.    Defendants Kelly Whittaker, Amy Greene, Barbara Sorkin, Ulster County Child

Protective Services, Ulster County Municipality, committed acts of gender discrimination

(14th Amend US Const), by which they were motivated, and of unlawful retaliation in

violation of New York State Social Services Law 413, and Immunity from Liability under

New York State Social Services Law 419, and due process clauses (5th & 14th Amend

US Const), for the reporting of a case of suspected child abuse or neglect.

326.    Specifically, within days of Ben Gary reporting an incident  of suspected abuse to the

NYS SCR Hotline, on Sept 21, 2011, of a incident of possible child abuse or neglect upon

his child from a third party, to wit Suzanne Cayley, the Defendants instituted a neglect

proceeding against him on Sept 28, 2011, in both Family Court and administrative CPS

maltreatment proceeding against him under Administrative procedures under New York

Social Services law.

327.    That retaliatory proceeding resulted in his child being taken away from him arbitrarily

and capriciously, in violation of law as detailed elsewhere in this complaint.

328.    Furthermore, the Defendants' discriminatory and disparate treatment of Ben Gary is

evidenced by the their ongoing pattern of ignoring or declining to pursue, investigate or

charge the female parent of the subject child, as detailed in the statement of facts.

329.    These actions both discriminated against and penalized Ben Gary for the exercise of his

legal duty, and chilled future due diligence and lawful action of Ben Gary from reporting

further acts of abuse or neglect of his child, out of fear from further retaliation from the

Defendants.

## COUNT XXIX

## MALICIOUS PROSECUTION

330.    Paragraphs 58 to 73 are incorporated herein by reference.

331.    Defendants Elisabeth Krisjanis, Esq. and Jillian Jackson, Esq., and other unknown named

persons, did commit malicious prosecution against Plaintiff Ben Gary, by charging him

with Child Neglect or Abuse, in a quasi-criminal court action, when they were aware, or

should have been aware, that none of the acts alleged constituted any act of neglect or

abuse, and that they knew or should have known, that the facts upon which they based the

charge of neglect or abuse were insufficient, as a matter of NYS statutory law, to sustain a

finding of neglect or abuse, and in fact that all the acts alleged were privileged,

guaranteed, reserved and protected under the U.S. and N.Y.S. Constitutions.

332.    Furthermore, their motivation, whether in conjunction with and/or separately from the

was to separate the Plaintiffs and infringe upon their parental-child rights, association and

speech.

333.    Furthermore, in conjunction with and/or separately from the above acts, the Defendants'

motivation, intent and purpose was to discriminate against Ben Gary on basis of and for

the prejudicial intent of gender discrimination, to negatively affect the custody

proceedings that Plaintiff was then litigating.

334. Ben Gary was exonerated on the merits, of any neglect or maltreatment allegations by

OFCS administrative court decision, August 15, 2012.

335. Due to the actions of the Defendants, that had no valid basis in law, Plaintiff has suffered

from continual and severe emotional distress, mental anguish, depression, grief and loss

of parent-child consortium. Additionally these actions in fact did negatively impact the

custody trial Plaintiff had been litigating, by undermining any possible custody award

with the sanction imposed by the Defendants' actions.


## COUNT XXX

## MALICIOUS PROSECUTION


336. Paragraphs 58 to 73 are incorporated herein by reference.

337. Defendants Kelly Whittaker, Amy Greene and other unknown named person did commit

malicious prosecution against Plaintiff Ben Gary for by charging him with Maltreatment,

in a quasi-criminal administrative action, when they were aware, or should have been

aware, that none of the acts alleged constituted any act of abuse or maltreatment, and that

they knew or should have known, that the facts upon which they based the charge of

neglect or abuse were insufficient, as a matter of NYS statutory law, to sustain a finding

of neglect or abuse, and in fact that all the acts alleged were privileged, guaranteed,

reserved and protected under the U.S. and N.Y.S. Constitutions.

338.   Furthermore, their motivation, whether in conjunction with and/or separately from the

was to separate the Plaintiffs and infringe upon their parental-child rights, association and

speech; the defendants bad faith was additionally evidenced by false statements of facts,

about Ben Gary having been involved with domestic violence and A       being "highly

autistic", put into the record and submitted to the administrative court, see paragraphs 88

to 90.

339.   Furthermore, in conjunction with and/or separately from the above acts, the Defendants'

motivation, intent and purpose was to discriminate against Ben Gary on basis of and for

the prejudicial intent of gender discrimination, and for the purpose of disrupting the

custody proceedings concurrent at that time.

340.   Ben Gary was exonerated on the merits, of any neglect or maltreatment allegations by

OFCS administrative court decision, August 15, 2012.

341.   Due to the actions of the Defendants, that had no valid basis in law, Plaintiff has suffered

from continual and severe emotional distress, mental anguish, depression, grief and loss

of parent-child consortium.


## COUNT XXXI

## CRUEL AND UNUSUAL PUNISHMENT

### 8th Amendment to the U.S. Constitution


342.   The Defendants Elisabeth Krisjanis, Jillian Jackson, Esq., Barbara Sorkin, Ulster County

Child Protective Services/Ulster County Dept of Social Services, Ulster County

Municipality, and other unknown named Defendants violated the prohibitions against cruel and unusual punishment against the Plaintiffs.

343. Plaintiffs were subjected to cruel and unusual and/or excessive punishment in violation of the 8th Amendment of the U.S. Constitution, and to the states through the 14th Amendment (see Louisiana ex rel. Francis v. Resweber, 329 U.S. 459 (1947)) of the U.S. Constitution, without legal substantive due process or premise, and that said Defendants' actions, abusing and misusing the power vested to them as agents of the state and government, upon and against Plaintiffs were:

    a.    By its severity degrading to the Plaintiffs' dignity;

    b.    Was inflicted arbitrarily and capriciously;

    c.    Actions that amounted to severe punishment for Plaintiffs' constitutionally protected activity and behavior;

    d.    Effectuated punishment that was clearly out of proportion to the alleged offense, (see Solem v. Helm, 463 U.S. 277 (1983))

    e.    And was effectively punishment that would be clearly rejected throughout society, offends society's sense of justice, and decency, and was patently unnecessary, (see Trop v. Dulles, 356 U.S. 86, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958))

    f.    Offensive to society's expectations for the sanctity of the family and parent child bonds.

344. The result of the Defendants' actions amounted to extended psychological torture in the deprivation and forced denial of each other's care and comfort, denial of father-child

company, denial of familial interaction and association, severe emotional distress, mental

anguish, depression, and grief, under a continuing multi-year sanction, threat and

extortion of criminal sanctions and imprisonment, subject to pillory and public

denigration via the publication of this status to the community.

## COUNT XXXII

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

345.    Paragraphs 80-81 are hereby incorporated by reference.

346.    On or about January 27, 2012, Defendants Ulster County Mental Health Department,

Mary Ellen Schneider, Joseph Bennett, and other unknown named persons, knowing that

the Plaintiffs were being treated as such, contacted Dr. Kathleen Caproni, a therapist who

had been contracted and hired by and was treating Ben Gary, his daughter A        , and

Suzanne Cayley, in family co-therapy counseling, and the Defendants explicitly

demanded, directed, commanded and implicitly threatened Dr. Caproni to cease

administering therapy to the Plaintiffs.

347.    Defendants did not have authority to make such demands, but due to the Defendants'

interference and pressure, Dr. Caproni did in fact affirmatively cease administering

therapy to the Plaintiffs.

348.    The Defendants disrupted a contiguous duration of therapy, interfered with the

therapeutic goals and treatment that had been accomplished, interfered with Dr. Caproni's

ability to provide court ordered reports on the results of that therapy, forced Plaintiffs into

therapy with a social worker, Mary Ellen Schneider, as replacement worker for the

therapy being received from Dr. Caproni, a licensed psychologist, and rendered moot and

wasted all the monies paid to Dr. Caproni by Ben Gary for these services.

349.   Additionally, whereas Dr. Caproni was of the expert opinion via written report that

Plaintiffs should be reunited, whereas Mary Ellen Schneider impeded and affirmatively

opposed the reunification of the Plaintiffs via unconstitutional demands on their

relationship, as detailed in Counts IX and X.


## COUNT XXXIII

## INTERFERENCE WITH PARENTING RIGHTS FOR CHOICE OF THERAPIST

## 42 USC 1983


350.   Paragraphs 80-81 are hereby incorporated by reference.

351.    On or about January 27, 2012, Defendants Ulster County Mental Health Department,

Mary Ellen Schneider, Joseph Bennett, and other unknown named persons, knowing that

the Plaintiffs were being treated as such, contacted Dr. Kathleen Caproni, a therapist who

had been contracted and hired by and chosen by Ben Gary, and additionally directed by

the Family Court, to treat his daughter A₁         , and himself, in family co-therapy

counseling; Defendants demanded, directed, commanded and implicitly threatened Dr.

Caproni to cease administering therapy to the Plaintiffs.

352.   Defendants did not have authority to make such demands, but due to the Defendants'

interference and pressure, Dr. Caproni did in fact affirmatively cease administering

therapy to the Plaintiffs.

353.   The Defendant did thus interfere with Ben Gary's parental and discretionary choice of what medical practitioner to use in the treatment of his daughter, and did thus interfere with his parental rights (14th Amend US Const.); additionally the Defendants actions violated due process, as there was no process at all adhered to, it was simply and directly effectuated ad hoc.

354.   The Defendants disrupted a contiguous course of therapy, interfered with the therapeutic goals and treatment that had been accomplished, interfered with Dr. Caproni's ability to provide court ordered reports on the results of that therapy, forced Plaintiffs into therapy with a social worker, Mary Ellen Schneider, as a replacement worker for the therapy being administered from Dr. Caproni, a licensed psychologist, wasted and rendered moot all the monies paid to Dr. Caproni by Ben Gary for those services.

355.   Additionally, whereas Dr. Caproni was of the expert opinion via written report that Plaintiffs should be reunited, whereas Mary Ellen Schneider impeded and affirmatively opposed the reunification of the Plaintiffs via unconstitutional demands on their relationship, as detailed in Counts IX and X.

## COUNT XXXIV

### DEFAMATION

356.   Defendants Kelly Whittaker, Amy Greene, Elisabeth Krisjanis, Jillian Jackson, Barbara Sorkin, Ulster County Municipality, and unknown named Defendants, are liable for defamation of character of Ben Gary Treistman, by casting aspersions of moral turpitude, and besmirching his character, professional standing, moral creed and constitution,

fatherhood and personhood, where the premise and allegations of legal violation and other defamation were untrue and false, and furthermore by having these accusations and characterizations published or to be made public directly or incidentally, through public court documents, publication of restraining orders, and/or by other means.

357.   Plaintiff has suffered a sullying of his reputation in his personal and professional life and relationships, and a harm to his business directly and adjunctively due to their actions, and from these aspersions having reached third parties, and the public community at large, causing per se and actual irreparable injury to Plaintiffs in his social and community life from the indelible stigma of suspicion as to the charges levied against him, e.g., abuse of children, danger to other people, substandard parent, and other things.

### Damages:

358.   As a direct and proximate result of the Defendants' unlawful, unconstitutional, prejudicial, and malfeasant acts, the Plaintiffs have sustained injuries and damages:

   a.   The forced emotional and physical disassociation and rendering asunder of family between loving father and daughter, under threat of criminal sanction and imprisonment, for 14 months as of the filing date of this complaint, and the psychological pain resulting from denial of their right to free familial association and enjoyment of each other's company; continual and severe emotional distress, mental anguish, depression, grief and loss of parent-child consortium, and alienation of affections and familial bonds;

b.   The heinous teaching, invidious psychological damage and imprinting of A₁
     to fear her father, and the Parental Alienation effected upon her, the severing of
     parent-child bonds, to view him as person of suspicion, of someone to be feared,
     that he is a danger to her, that she cannot speak freely to him without punishment,
     and that he violated the law and abused her, and is incapable of parenting her, or
     providing life, moral or religious guidance;

c.   All Social ties and bonds severed between father and daughter;

d.   Extreme emotional distress resulting from these violations of law and duty to
     Plaintiffs;

e.   The effectuation of a negative substantive impact upon custody and assessments
     of parental fitness, and opportunity for same;

f.   Loss of business and standing in the community

g.   Costs, fees and expenses incurred and expended countering the actions of the
     Defendants.


359.   WHEREFORE, Plaintiffs request that this Court enter judgment against the Defendants
       proportional to their respective liability to be determined in an awards determination
       hearing, providing the following relief:


a.   Compensatory damages covering the expenses, in legal costs, and ancillary costs
     that Plaintiff Ben Gary was compelled to expend in countering Defendants'
     unfounded actions, in the amount of $18,000.00, exclusive of costs and interest,
     that Plaintiff is found to be entitled;

Page 86 of 89

b.  Punitive/exemplary damages against Defendants in the amount of $10,000,000.00 for the emotional pain and suffering endured by Plaintiffs for the duration of time they were forced to be apart from each other, which Plaintiffs stipulate to be 14 months as of the filing date of this complaint, exclusive of costs and interest;

c.  Punitive/exemplary damages against Defendants in the sum certain calculable amount of $500,000.00 per month, or proportional fraction thereof, for any continuing suffering and prejudice that Plaintiffs endure, after the filing of this complaint, for the pain and suffering as detailed in the body of this complaint, due to the Defendants' refusal to cease and desist their unlawful and liable actions against the Plaintiffs;

d.  An order placing Plaintiffs in the position that they would have been in had there been no violation of their rights or entitlements, to the extent possible;

e.  Psychological and counseling for A       , to ameliorate, correct, and make whole the improper, exploitive and illegal psychological damage done to her per the forced separations of Plaintiffs, and official inculcation of denigration of character of her father by the Defendants, parental alienation, to be paid for by the Defendants;

f.  An order enjoining and restraining the Defendants from further acts of constitutional and statutory violations, discrimination or retaliation;

g.  An order declaring the Defendants' conduct unconstitutional and/or otherwise unlawful;

h.  Enter a permanent injunction, upon proper motion, requiring Defendant Ulster County Municipality to adopt appropriate policies and legal standards education

training of its agencies, contractors and employees related to the mental health counseling, investigation, intrusive preventative actions and prosecution of alleged neglectful or abusive guardians, so as  to preemptively comport with constitutional and statutory guarantees and rights of the affected individuals, and so as to correct the Defendant's current endemic practice of improper institutional policies of interfering with parents' rights and discriminatory practices;

i.      An award of interest, costs, and attorney's fees;

j.      Any additional award amounts determined at a damages determination trial;

k.      Any and all other remedies provided pursuant to 42 U.S.C. 1983, the ADA, the Rehabilitation Act, the New York State Human Rights Law ("HRL"), N.Y. Exec. L. 290, et seq., and equitable jurisprudence;

l.      Take other appropriate measures to overcome the above described discrimination, statutory and constitutional violations; and

m.     Declaratory relief, and other further relief as the Court deems appropriate.

## JURY TRIAL DEMAND

360.   Plaintiffs demand a jury trial, pursuant to the Seventh Amendment to the Constitution of

the United States, as to all claims for these causes of actions and as to damages.

**Dated: December 28, 2012**


Respectfully submitted,



Ben Gary Treistman, Plaintiff,
Parent and Next Friend for
Plaintiff Anya Epiphany Cayley Treistman

(845) 679-0246
28 Garrison Road
Shady, NY 12409