# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**BEN GARY TREISTMAN,**

**1:12-cv-1897**
**(GLS/CFH)**

           **Plaintiff,**

        **v.**

**VALERIE LYN WACKS, ESQ. et al.,**

           **Defendants.**

_____

**APPEARANCES:**          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Ben Gary Treistman
Pro Se
28 Garrison Road
Shady, NY 12409

**FOR THE DEFENDANTS:**
Valerie Lyn Wacks, Esq.
Pro Se
74 Mill Road
Olivebridge, NY 12461

Lawrence Shelton, Esq.
Pro Se
369 Washington Avenue
Kingston, NY 12401

_Amy Greene, Kelly Whittaker, Elisabeth Krisjanis, Esq., Jillian Jackson, Esq., Barbara Sorkin, Denise Woltman, Charlene Boswell, Mary Ellen Schneider, Joseph Bennett, and Ulster County Municipality_

Cook, Netter Law Firm                ERIC M. KURTZ, ESQ.
P.O. Box 3939                        ROBERT D. COOK, ESQ.
85 Main Street
P.O. Box 3939
Kingston, NY 12402

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff *pro se* Ben Gary Treistman commenced this action against

defendants Amy Greene, Kelly Whittaker, Elisabeth Krisjanis, Esq., Jillian

Jackson, Esq., Barbara Sorkin, Denise Woltman, Charlene Boswell, Mary

Ellen Schneider, Joseph Bennett, Ulster County Municipality (collectively

"municipal defendants"), and unnamed Doe defendants, as well as

defendants *pro se* Valerie Lyn Wacks, Esq. and Lawrence Shelton, Esq.,

pursuant to 42 U.S.C. §§ 1983, 1985, the Health Insurance Portability and

Accountability Act of 1996 (HIPAA),[1] and New York common law.  (Compl.,

Dkt. No. 1.)  Pending are municipal defendants' motion for judgment on the

pleadings, (Dkt. No. 55), and motions to dismiss for failure to state a claim

by both Shelton, (Dkt. No. 56), and Wacks, (Dkt. No. 57).  For the reasons

that follow, the motion of municipal defendants is granted in part and

_____

[1] *See* Pub. L. No. 104-191, 110 Stat. 1936 (codified in scattered sections of 18, 26, 29, and 42 U.S.C.).

denied in part, and the motions of Shelton and Wacks are both granted.

## II. **Background**

### A. **Facts**

At the outset, the court notes that Treistman's complaint is eighty-nine pages in length and contains 360 numbered paragraphs and over thirty separate causes of action. (*See generally* Compl.) The profuse number of allegations are not organized chronologically, and, in some instances, hard to follow. Nonetheless, the court has endeavored to arrange the facts in a manner here that makes them more readily digestible, although, in places, they are still somewhat disjointed. The factual background is divided between allegations that pertain to Wacks and Shelton, and municipal defendants. The facts themselves are drawn from Treistman's complaint and presented in the light most favorable to him.

### 1. *Wacks and Shelton*

Treistman is the father of A.T., a minor, with whom he has enjoyed a father-daughter relationship from her birth to age seven. (Compl. ¶¶ 14-22, 102.) Suzanne Cayley is A.T.'s mother. (*Id.* ¶ 103.) In February 2011, Cayley filed a petition in New York State Family Court seeking full custody

of A.T. (*Id.* ¶ 104.) Cayley's attorney in the underlying Family Court matters was Shelton. (*Id.* ¶ 34.) As is required under New York law, *see* N.Y. Family Ct. Act § 249, Family Court appointed an attorney for the child in the custody proceeding; Wacks was appointed for that purpose. (Compl. ¶ 110.) Although not pertinent for reasons explained below, *see infra* Part IV.B, the complaint contains several allegations faulting the conduct of Shelton and Wacks in connection with certain Family Court matters in which A.T. and Treistman were involved.

### 2. *Municipal Defendants*

In May 2011, Cayley, took A.T. to Ulster County Mental Health Department (MHD), an agency of the County Department of Social Services (DSS). (*Id.* ¶ 23.) From MHD, "Cayley sought and obtained a psychiatric drug prescription for . . . Geodon" to qwell A.T.'s supposed temper tantrums. (*Id.* ¶ 25.) Geodon has not been approved by the Food and Drug Administration for use on children, and "is known to have serious side-effects." (*Id.* ¶ 26.) None of the MHD employees involved with A.T.'s case—Schneider, a licensed clinical social worker who was assigned as A.T.'s social worker, Bennett, who was Schneider's supervisor, or Dr. Howard Gottlieb, the psychiatrist that prescribed Geodon for an "off-label

use"—consulted, advised, or contacted Treistman regarding his daughter's care or the fact that a psychotropic drug was prescribed for her. (*Id.* ¶¶ 27-31.) Cayley also instructed A.T. to withhold information about her treatment from Treistman, leaving Treistman "completely ignorant of any of these developments." (*Id.* ¶¶ 32-33.)

On August 21, 2011, A.T. told Treistman that her mother gives her a pill every morning and complained of several symptoms. (*Id.* ¶¶ 39-40.) Treistman noticed excessive weight gain beginning in July 2011 and other changes in his daughter, including loss of enjoyment for chess and loss of stamina. (*Id.* ¶¶ 41-43.) In late August 2011, A.T. had an episode while dancing; she told Treistman "that her heart was beating too fast and that she was scared." (*Id.* ¶ 43.) Treistman elected not to seek medical intervention after carefully observing A.T. (*Id.* ¶ 44.) Following this incident, A.T., who protested the medication, was forced by Cayley to continue taking it. (*Id.* ¶¶ 48-49.)

The following month, Treistman called the New York State Central Register Child Abuse and Maltreatment Hotline to report an incident wherein Cayley left A.T. alone at her apartment and A.T. was locked out. (*Id.* ¶¶ 51-56.) Greene, Ulster County Child Protective Services (CPS)

supervisor/caseworker, and Whittaker, CPS caseworker, determined that Cayley was not neglectful in relation to the reported incident. (*Id.* ¶¶ 5, 6, 57.) Later in September, Whittaker telephoned Treistman regarding charges of neglect lodged against him. (*Id.* ¶ 58.) Treistman was directed to report to CPS. (*Id.* ¶ 59.) At the ensuing meeting, Greene and Whittaker interrogated Treistman and threatened him with, among other things, prosecution in Family Court, restraining orders forbidding contact with A.T., and imprisonment unless he agreed to discontinue "the interactions and parenting style . . . they . . . disapproved of," which included a laundry list of "activities." (*Id.* ¶¶ 61-63.) At some unspecified time, Greene, Whittaker, Krisjanis, DSS counsel, Jackson, DSS counsel, and Sorkin, deputy commissioner of DSS, obtained a restraining order prohibiting contact between A.T. and Treistman. (*Id.* ¶¶ 7, 8, 9, 64.) At the time Treistman filed his complaint, the order was still in effect. (*Id.* ¶ 98); however, during the litigation, the neglect proceedings were dismissed and Treistman now enjoys unrestricted and unsupervised visitation with A.T., *see Treistman v. Wacks*, 578 F. App'x 18, 19 (2d Cir. 2014). The same defendants who obtained the restraining order also petitioned a court to find that Treistman had neglected and/or abused A.T. (Compl. ¶ 65.) Part

of the motivation of these defendants was to disrupt an ongoing custody proceeding, referenced above, in Family Court, and because of "personal and institutional gender discriminat[ion]" against fathers.  (*Id.* ¶¶ 66, 68.)

As of October 11, 2011, and as a result of the foregoing, Treistman was permitted only one hour of supervised visitation per week.  (*Id.* ¶ 70.) Defendants also curtailed the subjects of discussion during these limited visits, but intentionally failed to convey the prohibited topics/behavior to Treistman.  (*Id.* ¶¶ 72-73.)  From December 16, 2011 to January 10, 2012, defendants encouraged Treistman to visit with A.T. at a McDonald's.  (*Id.* ¶ 74.)  However, on January 6, Woltman, a CPS caseworker, changed the visit date without notice, causing Treistman to fail to appear and upsetting A.T. to the point that Woltman required A.T. to go to the emergency room for treatment.  (*Id.* ¶¶ 10, 75-78.)  A.T.'s disability was blamed for this incident and A.T. was punished because of her disability by no longer being allowed to meet with Treistman at McDonald's and, instead, having only supervised visitation with her father.  (*Id.* ¶¶ 78-79.)

In December 2011 and January 2012, Treistman hired Dr. Kathleen Caproni for evaluation and parent-child counseling.  (*Id.* ¶ 80.)  In late January, Bennett and Schneider demanded that Dr. Caproni cease

therapy, which caused her to withdraw from her treatment of A.T. "due to
. . . repeated pressure from Bennet, Schneider and other[s]," "citing a
concern to not have institutional friction or interference with other patients
with [MHD]." (*Id.* ¶ 81.)

Treistman alleges other facts to demonstrate that defendants
interfered with his parental rights.  On February 15, 2012, Woltman forbade
Treistman from photographing or videotaping A.T. during their visits.  (*Id.*
¶ 82.)  In June 2012, Woltman accused Treistman of engaging in prohibited
coversations with A.T., demanded that the conversations stop, and
threatened to discontinue all visitation.  (*Id.* ¶¶ 83-87.)  In the same month,
at an Office of Children and Family Services administrative hearing,
Whittaker, Greene, and unnamed others, submitted false evidence against
Treistman for the purpose of prejudicing Treistman; the charges against
him were ultimately deemed unfounded.  (*Id.* ¶¶ 88-90 & at 22 n.3.)  Again
in June, Schneider told Treistman and A.T. that they could not discuss
certain topics, and that, if they did, they may never be reunited.  (*Id.* ¶ 91.)
Finally, in December 2012, Woltman and Boswell, a CPS supervisor,
though not directly present, accused Treistman of disciplining A.T. by
"pinch[ing] her on the buttock." (*Id.* ¶¶ 11, 96.)  Consequently, Woltman

required Treistman to attend parenting classes and threatened sanctions. (*Id.* ¶ 97.)

## B.    Procedural History

Treistman filed this action in late December 2012 asserting claims on behalf of A.T. and himself.  (*See generally* Compl.)  After joinder of issue, (Dkt. Nos. 6, 8, 10), Treistman sought a temporary restraining order and preliminary injunction by order to show cause that would prohibit defendants "from interfering with [p]laintiffs actions of association and free speech," (Dkt. No. 12, Attach. 3 at 4).  Appreciating a potential issue regarding Treistman's purported representation of A.T., the court stayed Treistman's motion and ordered the parties to further brief the representation issue.  (Dkt. No. 13.)  The court ultimately determined that Treistman was not a proper representative of A.T. for purposes of the litigation, and appointed a guardian ad litem to represent A.T.  (Dkt. Nos. 19, 27.)  A.T.'s guardian ad litem reported to the court that A.T. desired to have all claims asserted on her behalf dismissed.  (Dkt. No. 31.)  The court dismissed all claims asserted on A.T.'s behalf and denied Treistman's application for a preliminary injunction.  (Dkt. No. 32.)  Treistman's untimely motion for reconsideration was denied, (Dkt. No. 37), and he appealed,

(Dkt. No. 38).  The Second Circuit eventually dismissed the appeal as moot, explaining that Treistman informed the Court during oral argument "that the neglect proceedings against him have been dismissed, and that he currently has unrestricted and unsupervised visitation with his child." *Treistman*, 2014 WL 4626596, at *1.

Before the Circuit's resolution of Treistman's appeal, defendants filed the pending motions.  (Dkt. Nos. 55, 56, 57.)

### III.  Standard of Review

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted).  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

The following nineteen claims, asserted on Treistman's behalf, survived the dismissal of A.T.'s causes of action: (1) Wacks conspired with Whittaker, Green, Krisjanis and Jackson to deny Treistman "the right to

equal opportunity to parent his child" based on gender in violation of the Fourteenth Amendment, (Compl. ¶¶ 231-34); (2) Schneider denied Treistman his right of access to courts, freedom of speech, and freedom of association, in violation of the First Amendment, by prohibiting Treistman from speaking with A.T. about legal or court matters, or future or past visits, (*id.* ¶¶ 83, 259-64); (3) Scheinder, Woltman, and Boswell violated Treistman's right of access to courts, freedom of speech, and the right to parent-child association by refusing to lift certain constraints unless Treistman refrained from talking about future visits and when they would be reunited, (*id.* ¶¶ 265-70); (4) Schneider violated Treistman's rights protected by HIPAA and N.Y. C.P.L.R. 4504 by releasing protected information to third parties without Treistman's authorization, (*id.* ¶¶ 271-72); (5) Woltman, Boswell and others denied Treistman a host of rights in violation of the First and Fourteenth Amendments by prohibiting discussions with A.T. about court matters, discussions about future or past visits, and photographs or video of A.T., (*id.* ¶¶ 294-97); (6) CPS and the County failed to properly train Woltman, Boswell, Greene, Whittaker, and others "that demanding the suspension of guaranteed legal rights and privileges is a violation of [Treistman]'s constitutional and other rights," (*id.*

¶¶ 298-99); (7) CPS and the County failed to properly train Woltman, Boswell, Greene, Whittaker, and others as required by New York Social Services Law § 421, (*id.* ¶¶ 300-03); (8) CPS and the County interfered with Treistman's freedom of association and the right to parent-child familial association in violation of the First and Fourteenth Amendments by promulgating rules that prohibit "the giving of gifts to each other," (*id.* ¶ 304); (9) Woltman and Boswell violated Treistman's right to freely associate and parent without state interference by accusing Treistman of pinching A.T.'s buttock, asserting that Treistman did not have the right to discipline A.T., threatening sanctions unless Treistman forwent his rights, and retaliating against Treistman by ordering him to attend parenting classes in violation of the First and Fourteenth Amendments, (*id.* ¶¶ 305-07); (10) Whittaker, Greene, Krisjanis, and Jackson, and CPS and the County as employers that negligently trained those defendants, negligently inflicted emotional distress by "negligently appl[ying] improper laws and . . . standards as a premise to separate and cause [Treistman and A.T.] to be taken from each other," (*id.* ¶¶ 308-14); (11) Whittaker, Green, Krisjanis, Jackson, and Sorkin violated Treistman's right to parent his child by imposing certain rules "limiting his association with his daughter" in

violation of his First and Fourteenth Amendment rights, (*id.* ¶¶ 63, 315-21);

(12) Whittaker, Greene, Krisjanis, Jackson, Sorkin, CPS, DSS, the County, and others discriminated against Treistman on the basis of gender in violation of his equal protection rights, (*id.* ¶¶ 322-23); (13) Whittaker, Green, Sorkin, CPS, and the County discriminated against Treistman on the basis of gender as retaliation for Treistman's reporting of suspected child abuse or neglect by Cayley in violation of New York law and the Due Process Clauses of the Fifth and Fourteenth Amendments, (*id.* ¶¶ 324-29); (14) Krisjanis, Jackson, and others maliciously prosecuted Treistman by charging him with abuse or neglect in a quasi-criminal proceeding, (*id.* ¶¶ 330-35); (15) Whittaker, Greene, and others maliciously prosecuted Treistman by charging him with maltreatment in a quasi-criminal administrative action, (*id.* ¶¶ 336-41); (16) Krisjanis, Jackson, Sorkin, CPS, DSS, and the County subjected Treistman to cruel and unusual punishment and/or excessive punishment in violation of the Eighth Amendment, (*id.* ¶¶ 342-44); (17) MHD, Schneider, Bennett, and others tortiously interfered with contractual relations by contacting Dr. Caproni and commanding that she cease therapy with Treistman and A.T., (*id.* ¶¶ 345-49); (18) MHD, Schneider, Bennett, and others interfered with Treistman's

right to choose a therapist by commanding Dr. Caproni to cease treatment in violation of his parental rights under the Fourteenth Amendment and due process, (*id.* ¶¶ 350-55); (19) Whittaker, Greene, Krisjanis, Jackson, Sorkin, the County, and others defamed Treistman "by casting aspersions of moral turpitude, and besmirching his character, professional standing, moral creed and constitution, fatherhood and personhood, where the premise and allegations of legal violation and other defamation were untrue and false," (*id.* ¶¶ 356-57).  For the sake of clarity, the court will hereafter refer to Treistman's causes of action by the numbers designated here.

## A.    Municipal Defendants

Municipal defendants argue that dismissal is appropriate because various forms of immunity shield the individual defendants, (Dkt. No. 55, Attach. 3 at 2-17), Treistman has failed to state a *Monell*[2] claim because there is no proof of a formal policy that authorized unconstitutional conduct, (*id.* at 18-19), and the *Rooker-Feldman*[3] doctrine divests this court of jurisdiction of what is in essence an appeal of a judgment of Family Court, (*id.* at 23-24).  Aside from these global reasons for dismissal, municipal

---

[2] *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

[3] *See D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).

14

defendants contend that Treistman's Eighth Amendment and substantive due process claims are infirm.  (*Id.* at 20-22.)

Before digging into the substance of municipal defendants' arguments, it is noteworthy that they have submitted a statement of material facts in support of their motion.  (Dkt. No. 55, Attach. 1.)  While the document appears to merely restate as fact some of the allegations contained in the complaint, (*id.*), it is procedurally improper.  Only motions for summary judgment require a statement of material facts, *see* N.D.N.Y. L.R. 7.1(a)(3), and a motion brought pursuant to Rule 12(c) relies on only the pleadings and a select few other items, *see Daniels ex rel. Daniels v. Comm'r of Soc. Sec.*, 456 F. App'x 40, 41 (2d Cir. 2012) ("In deciding a motion under Rule 12(c), the district court may consider only the contents of the pleadings themselves, documents attached to the pleadings as exhibits or incorporated by reference, and items of which judicial notice may be taken.").  Moreover, the court notes that several of municipal defendants' contentions rely upon the existence and terms of an order or orders of Family Court.  (*See, e.g.*, Dkt. No. 55, Attach. 3 at 13, 16-17.) While Treistman generically refers to Family Court orders in his complaint, (*see, e.g.*, Compl. ¶¶ 64, 70, 73, 98, 113, 169), the order or orders and its

or their terms are not part of the record.  As such, given the posture of the pending motion, brought pursuant to Rule 12(c) and early on in the litigation, reference to matters outside of the pleadings is excluded from the court's consideration.  *See* Fed. R. Civ. P. 12(d).  With these issues in mind, the court turns to municipal defendants' arguments.

> 1.    *Krisjanis and Jackson*

Municipal defendants first assert that Krisjanis and Jackson, both of whom are DSS counsel, (Compl. at 5), are entitled to absolute immunity as agency lawyers.  (Dkt. No. 55, Attach. 3 at 3-7.)  While it is settled in this Circuit that, just like prosecutors, agency lawyers are "accorded absolute immunity from [§ 1983] claims arising out of the performance of [their] duties," *Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984); *see Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010), at this juncture, the claims against Krisjanis and Jackson cannot be dismissed because of immunity.

There are several reasons for this conclusion.  First, the factual allegations in the complaint do not squarely show that Krisjanis and Jackson were acting solely in the performance of their duties, as opposed to in an administrative or investigatory capacity, under which conditions

they would not be shrouded with absolute immunity.  *See Van de Kamp v. Goldstein*, 555 U.S. 335, 342-43 (2009).  Indeed, the factual allegations appear to go beyond conduct for which agency lawyers enjoy immunity, *i.e.*, initiating proceedings and presenting the state's case.  *See Walden*, 745 F.2d at 151.  Second, absolute immunity, as contemplated by *Walden*, applies only to § 1983 claims, whereas Treistman has nominally alleged claims pursuant to §§ 1983 and 1985 and state common law as against Krisjanis and Jackson.  (Compl. ¶¶ 231-34, 308-14, 315-21, 322-23, 330-35, 342-44, 356-57.)  Municipal defendants have entirely failed to address if and how immunity would apply to the claims alleged pursuant to authority other than § 1983.[4]  Notwithstanding the foregoing, on a more developed factual record, it may be so that Krisjanis and Jackson are entitled to absolute immunity for at least some of Treistman's claims; accordingly, municipal defendants are free to raise this argument again at an appropriate time.

2.     *Sorkin, Greene, and Whittaker*

---

[4] The court notes that, while there is some authority that suggests that prosecutorial immunity extends to § 1985 claims as well, *see, e.g.*, *Hayes v. Hall*, 604 F. Supp. 1063, 1068 (W.D. Mich. 1985), defendants have not made this argument, and, accordingly, the court will not endeavor to resolve it on an undeveloped record.

On similar logic to the argument advanced on behalf of Krisjanis and Jackson, municipal defendants assert that Sorkin, Greene, and Whittaker are absolutely immune, as agency officials, from all claims asserted by Treistman. (Dkt. No. 55, Attach. 3 at 7-10.) The court disagrees.

Although it is true "that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts," *Butz v. Economou*, 438 U.S. 478, 515 (1978), the nature of this litigation—at a time prior to any meaningful discovery, (Dkt. Nos. 60, 67)—is and Treistman's allegations are such that the court will not dismiss any claims on the basis of immunity with respect to Sorkin, Greene, or Whittaker. Additionally, municipal defendants' contention that these three defendants are entitled to immunity suffers from the same deficiencies identified above: there is no argument that immunity applies to the § 1985 or common law claims asserted against them. *See supra* Part IV.A.1; (Compl. ¶¶ 231-34, 300-03, 308-314, 315-21, 322-23, 324-29, 336-41, 342-44, 356-57.) Again, at an appropriate time and on an appropriate record, municipal defendants are free to raise this argument again.

3. *Schneider, Bennett, Woltman, and Boswell*

Municipal defendants next contend that Schneider, Bennett, Woltman, and Boswell are entitled to absolute judicial immunity because they were acting as arms of the court in carrying out an order of Family Court.  (Dkt. No. 55, Attach. 3 at 10-17.)  Again, the court disagrees that dismissal is warranted at this juncture.

Treistman has alleged four claims against Schneider, one claim against Bennett, and three claims each against Woltman and Boswell. (Compl. ¶¶ 259-64, 265-70, 294-97, 305-07, 345-49, 350-55.)  In support of their argument, municipal defendants rely exclusively on New York case law, *see Mosher-Simons v. Cnty. of Allegany*, 99 N.Y.2d 214, 220-21 (2002).  (Dkt. No. 55, Attach. 3 at 10-17.)  While the New York Court of Appeals indeed upheld the dismissal of a negligence action on immunity grounds—in particular, by finding that a caseworker essential to the judicial decision-making process who functions as an arm of the court is immune from liability for negligence—municipal defendants fail to explain why or how the New York ruling mandates dismissal of all claims against these defendants in this federal action.

At best, it seems, *Mosher-Simons* could support dismissal of the common law claim of tortious interference with contractual relations

asserted against Schneider and Bennett.  (Compl. ¶¶ 345-49.)  And the problem with dismissal of that claim, as mentioned above, *see supra* Part IV.A, is that the Family Court order relied upon by municipal defendants is not part of the record and its terms are not pleaded in the complaint.  (Dkt. No. 55, Attach.  at 13, 16.)  Indeed, municipal defendants' contention that Schneider, Bennett, Woltman, and Boswell were merely "carrying out the Family Court order" may prove to be true, but it is unclear at this juncture whether the complained of conduct was specifically authorized or required by the order.  (*Id.*)

It is also noteworthy that regardless of whether immunity shields her, Treistman's fourth cause of action against Schneider for violations of HIPAA and N.Y. C.P.L.R. 4504, (Compl. ¶¶ 271-72), must be dismissed. Indeed, neither HIPAA nor C.P.L.R. 4504 give rise to a private cause of action.  *See Colon v. Cnty. of Nassau*, No. 12-CV-4466, 2014 WL 4904692, at *10 (E.D.N.Y. Sept. 26, 2014) ("HIPAA does not provide for either an express or implied private right of action." (internal quotation marks and citation omitted)); *Burton v. Matteliano*, 81 A.D.3d 1272, 1275 (4th Dep't 2011) ("[T]here is no private cause of action pursuant to CPLR 4504.").

*5.    The County, DSS, CPS, and MHD*

Municipal defendants assert that claims against the County must be dismissed because Treistman has failed to plead facts to demonstrate that the County had an unconstitutional policy in compliance with the requirements of *Monell*.  (Dkt. No. 55, Attach. 3 at 18-19.)  For the reasons explained below, some of Treistman's claims against the County must be dismissed while others survive the motion.

To establish municipal liability pursuant to § 1983, a plaintiff must allege: "(1) that the County's failure to train its employees amounted to deliberate indifference to constitutional rights; (2) that there was a persistent and widespread unconstitutional governmental policy or custom; or (3) that a County policymaker approved any constitutional violation." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (citations omitted).  As to the second avenue of liability, a plaintiff must "'plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zherka v. City of N.Y.*, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)).  Moreover, while this rule "does not mean that the plaintiff must show that the municipality had an

explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citations omitted).

Treistman has named the County as a defendant in eight of his claims. Two of the causes of action, which require little discussion, are alleged as New York common law claims of negligent infliction of emotional distress and defamation. (Compl. ¶¶ 308-14, 356-57.) Other than a single unavailing argument addressed fully below, *see infra* Part IV.A.6, municipal defendants have not offered a basis for the dismissal of those claims and the court declines to dismiss them at this juncture.

Two other claims are characterized as § 1983 causes of action alleging a failure to train Woltman, Boswell, Greene, Whittaker, and others who are unnamed in the complaint. (*Id.* ¶¶ 298-99, 300-03.) The first of those two claims is supported by Treistman's contention that the County failed to properly train the identified defendants that it was unconstitutional for them to demand that Treistman forego certain constitutional rights. (*Id.* ¶ 298.) These allegations minimally support a theory of liability for the County, *i.e.*, "that the County's failure to train its employees amounted to

deliberate indifference to constitutional rights." *Carter*, 759 F.3d at 164.

The second failure to train claim is premised upon Treistman's allegation

that the County failed to train its employees as required by New York

Social Services Law § 421. (Compl. ¶¶ 300-03.) Because a violation of

state law, as relied upon by Treistman, cannot support a claim under

§ 1983, *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ("Section

1983 provides a remedy only for the deprivation of 'rights, privileges, or

immunities secured by the Constitution and laws' of the United States."

(quoting 42 U.S.C. § 1983)), this claim must be dismissed.

The four remaining causes of action asserted against the County are

also alleged pursuant to § 1983. (Compl. ¶¶ 304, 322-23, 324-29, 342-44.)

While Treistman's eighth and twelfth causes of action plainly alleged

policies or customs that caused him to be denied constitutional rights, (*id.*

¶¶ 304,[5] 322-23[6]), his thirteenth and sixteenth causes must be dismissed

---

[5] In his eighth cause of action, Treistman alleges that the County interfered with his freedom of association, and right of familial association by "promulgating administrative rules of, and the imposition of prohibiting the giving of gifts to each other" and that these rules caused a deprivation of rights. (Compl. ¶ 304.) While the claim is not a model of clarity, the basis for dismissal argued by municipal defendants does not provide the court with a valid basis to dismiss.

[6] In his twelfth cause of action, Treistman alleges that the County discriminated against him based on his gender "as part of an ongoing conduct, practice and pattern of discrimination against male parents" and that said policy forced him to be separated from his daughter in violation of constitutional rights. (Compl. ¶ 322.)

as against the County.  Indeed, no custom or policy is alleged with respect to those claims and no other basis of municipal liability is pleaded or otherwise apparent.

Finally, the court notes that, while municipal defendants have failed to so argue, Treistman's allegations against CPS, DSS, and MHD must be dismissed because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy*, No. 1:10-cv-1390, 2014 WL 2176148, at *6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted).  Accordingly, the claims asserted against those departments of Ulster County are dismissed as against them.

     *6.*   Rooker-Feldman *Doctrine*

Municipal defendants argue that subject matter jurisdiction is lacking under the *Rooker-Feldman* doctrine because Treistman's claims are merely an attack on a state court judgment.  (Dkt. No. 55, Attach. 3 at 23-24.)  On the present record, the court cannot agree.

In essence, the *Rooker-Feldman* doctrine bars "what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself

violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). The Second Circuit has outlined four requirements for determining whether this doctrine applies: (1) the plaintiff now in federal court must have lost in state court; (2) the injuries of which the plaintiff complains must have been caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state court judgment must have been rendered before the district court proceedings commenced. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citations omitted).

Here, it is again unclear whether this argument could be successful on a more fully developed record. Aside from allegations in the complaint which indicate that certain Family Court orders were entered with respect to Treistman and A.T., those orders are not part of the record and their terms have not been disclosed. At this juncture, it is impossible to say that *Rooker-Feldman* has any apparent application; it is particularly unclear whether Treistman's injuries were caused by the state court judgment because the terms of Family Court's order(s) are not part of the record. It may be true that some of the conduct complained of herein was countenanced by Family Court orders and that Treistman's real complaint

is with a judgment of a New York court.  On the present record, this argument must be rejected, however.

     *7.    Cruel & Unusual Punishment*

Municipal defendants assert that Treistman's Eighth Amendment claim must be dismissed because it is "abundantly clear that the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes," and Treistman does not allege that he was arrested or that criminal charges were filed against him. (Dkt. No. 55, Attach. 3 at 20-21.)  Treistman counters that "there is no touchstone in law that demarcates criminal from civil deprivations of th[e] Constitutional protection" afforded by the Eighth Amendment.  (Dkt. No. 63 at 15.)  Contrary to what Treistman may believe, because the protection afforded by the Eighth Amendment "is not applicable to purely civil penalties," *Zwick v. Freeman*, 373 F.2d 110, 119 (2d Cir. 1967), Treistman's claim that various defendants violated his right to be free from cruel and unusual punishment, (Compl. ¶¶ 342-44), must be dismissed.

     *8.    Substantive Due Process*

Lastly, municipal defendants assert that Treistman's substantive due process claim must be dismissed because "liability can no longer be

attributed to the officers, or the department in supervising the officers after there has been court confirmation of the reduced visitation, which occurred on October 11, 2011." (Dkt. No. 55, Attach. 3 at 21-22.)[7]  This argument is premised upon municipal defendants' interpretation of *Schweitzer v. Crofton*, 935 F. Supp. 2d 527 (E.D.N.Y. 2013).  (Dkt. No. 55, Attach. 3 at 21-22.)  The court disagrees that dismissal is required at this time.

Treistman's thirteenth and eighteenth claims allege violations of his "due process" rights.  (Compl. ¶¶ 324-29, 350-55.)  The first of those claims, which asserts that Whittaker, Green, and Sorkin discriminated against Treistman by filing a neglect petition targeting him on the basis of gender as retaliation for his reporting of suspected child abuse by Cayley, and resulted in A.T. "being taken away from him," (*id.* ¶¶ 325-27), facially meets the pleading requirement for a substantive due process claim.  Indeed "parents have a 'constitutionally protected liberty interest in the care, custody and management of their children,' and . . . the deprivation of this interest is actionable on a substantive due process theory," *Southerland v. City of N.Y.*, 680 F.3d 127, 152 (2d Cir. 2012) (quoting

---

[7] Municipal defendants also make an argument for the dismissal of a procedural due process claim, (Dkt. No. 55, Attach. 3 at 21); however, Treistman concedes that he "does not contend [that] there were any procedural due process violations," (Dkt. No. 63 at 16).

*Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999)), provided "that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *id.* at 151 (internal quotation marks and citations omitted).

The court recognizes that "unusual deference" applies to case workers in the context of abuse and neglect investigations. *Id.* at 152 (internal quotation marks and citation omitted). In fact, the Second Circuit has explained that as long as a case worker has a "reasonable basis" for her abuse or neglect finding, the "investigation passes constitutional muster." *Id.* (internal quotation marks and citation omitted). On the facts now before the court, which are drawn from the pleading and presented in the light most favorable to Treistman, it is unclear if the deferential standard applies. Indeed, Treistman alleges that he "was exonerated on the merits, of any neglect or maltreatment allegations," (Compl. ¶¶ 334, 340), which, at this juncture, may suggest that a reasonable basis for the caseworkers' neglect finding was lacking.

The second claim in which Treistman mentions due process clearly implicates procedural due process rights. Indeed, Treistman alleges that "[d]efendants actions violated due process, as there was no process at all

adhered to, it was simply and directly effectuated ad hoc." (*Id.* ¶ 353.)

However, this "due process" allegation drops out of the case because

Treistman "does not contend [that] there were any procedural due process

violations." (Dkt. No. 63 at 16.)  Treistman's concession amounts to a

withdrawal of any procedural due process claims.

## B. **Shelton and Wacks**

Shelton and Wacks separately seek dismissal for failure to state a

claim.  (Dkt. Nos. 56, 57.)  Treistman "opposes th[ese] motions on the sole

grounds that they are premature, and that this court may not have

jurisdiction over the [d]efendants or their arguments and claims for

dismissal" because "[t]he question of A.T.'s termination is currently

[pending] before the Second Circuit."  (Dkt. No. 63 at 21.)  The court notes

that none of Treistman's claims are pressed against Shelton and only one

claim targets Wacks.  (Compl. ¶¶ 231-34.)  Regardless, in light of

Treistman's concession that his only gripe with the dismissal of Shelton

and Wacks is that the district court was divested of jurisdiction during the

pendency of his appeal, which has since been decided, Shelton and Wacks

are both terminated from this action.

## C. **Other Observations**

Given the sheer number of claims and piecemeal way in which the court was forced to address them, it would benefit everyone involved in this litigation if Treistman sought to file an amended pleading succinctly setting forth his claims not specifically dismissed by this order.

## V. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that municipal defendants' motion for judgment on the pleadings (Dkt. No. 55) is **GRANTED IN PART** and **DENIED IN PART** as detailed below; and it is further

**ORDERED** that Treistman's seventh cause of action (Compl. ¶¶ 300-03) is **DISMISSED** in its entirety; and it is further

**ORDERED** that Treistman's thirteenth and sixteenth causes of action (Compl. ¶¶ 324-29, 342-44) are **DISMISSED** as against the County; and it is further

**ORDERED** that Treistman's sixth, seventh, eighth, tenth, twelfth, thirteenth, sixteenth, and eighteenth causes of action (Compl. ¶¶ 298-99, 300-03, 304, 308-14, 322-23, 324-29, 342-44, 350-55) are **DISMISSED** as against CPS, DSS, and MHD; and it is further

**ORDERED** that Treistman's sixteenth cause of action (Compl.

¶¶ 342-44) is **DISMISSED** in its entirety; and it is further

ORDERED that Treistman's eighteenth cause of action (Compl.

¶¶ 350-55) is **DISMISSED** insofar as it alleges a violation of due process

rights; and it is further

ORDERED that Shelton's motion to dismiss (Dkt. No. 56) is

**GRANTED** and he is **TERMINATED** from this action; and it is further

ORDERED that Wacks' motion to dismiss (Dkt. No. 57) is **GRANTED**

and she is **TERMINATED** from this action; and it is further

ORDERED that the parties contact Magistrate Judge Christian F.

Hummel in order to schedule further proceedings in this matter; and it is

further

ORDERED that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

November 26, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court