# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**BEN GARY TREISTMAN,**

**1:12-cv-1897**
**Plaintiff,**                    **(GLS/CFH)**

**v.**

**VALERIE LYN WACKS, ESQ. et al.,**

**Defendants.**

_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Ben Gary Treistman
Pro Se
28 Garrison Road
Shady, NY 12409

**FOR THE DEFENDANTS:**
*Valerie Lyn Wacks, Esq.*
Office of Eric Schneider          ERIC SCHNEIDER, ESQ.
P.O. Box 3936
Kingston, NY 12402

*Amy Greene, Kelly Whittaker,*
*Elisabeth Krisjanis, Esq., Jillian*
*Jackson, Esq., Barbara Sorkin, Denise*
*Woltman, Charlene Boswell, Mary Ellen*
*Schneider, Joseph Bennett, and Ulster*
*County Municipality*
Cook, Netter Law Firm             ERIC M. KURTZ, ESQ.
P.O. Box 3939                     ROBERT D. COOK, ESQ.
85 Main Street
Kingston, NY 12402

*Karin Hubbs and Pamela Joern, Esq.*
Cook, Netter Law Firm                    ERIC M. KURTZ, ESQ.
P.O. Box 3939
85 Main Street
Kingston, NY 12402

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Ben Gary Treistman commenced this action against

defendants Amy Greene, Kelly Whittaker, Elisabeth Krisjanis, Esq., Jillian

Jackson, Esq., Barbara Sorkin, Denise Woltman, Charlene Boswell, Mary

Ellen Schneider, Joseph Bennett, Ulster County Municipality (collectively

"municipal defendants"), and unnamed Doe defendants, as well as

defendants *pro se* Valerie Lyn Wacks, Esq.[1] and Lawrence Shelton, Esq.,

pursuant to 42 U.S.C. §§ 1983, 1985, the Health Insurance Portability and

Accountability Act of 1996 (HIPAA),[2] and New York common law.  (Compl.,

Dkt. No. 1.)  Pending are Wacks' motion to dismiss for failure to state a

claim, (Dkt. No. 109), and municipal defendants' motion for summary

_____

[1] Wacks is now represented on this motion.

[2] *See* Pub. L. No. 104-191, 110 Stat. 1936 (codified in scattered sections of 18, 26, 29, and 42 U.S.C.).

judgment, (Dkt. No. 90), and Triestman's cross motion for summary

judgment, (Dkt. No. 94).  For the reasons that follow, Wacks' motion is

granted, the motion of municipal defendants is granted in part and denied

in part, and Triestman's motion is denied.

## II.  Background

### A.    Facts

*1.    Motion for Summary Judgment*[3]

General familiarity with the facts is presumed from the court's earlier

Memorandum-Decision and Order.  (Dkt. No. 70 at 3-9.)  Treistman and

Suzanne Cayley are the parents of A.T. and have been in a custody

dispute in Ulster County Family Court since February 2011.  (Defs.'

Statement of Material Facts (SMF) ¶¶ 1, 16, Dkt. No. 90, Attach. 3.)  A.T.

was seven years old at the time the dispute began and is diagnosed with

pervasive developmental disorder, a type of developmental delay.  (Dkt.

---

[3]  Unless otherwise noted, the facts are not in dispute.  Also, Triestman's failure to comply with Local Rule 7.1(a)(3) by admitting or denying each of the paragraphs in the municipal defendants' statement of material facts is not without consequences.  Municipal defendants' properly supported and uncontroverted facts are therefore deemed admitted.  In support of his cross motion for summary judgment, Triestman submits a statement of material facts comprised exclusively of unsupported allegations derived from his amended complaint. (Dkt. No. 94, Attach. 1 at 3-9.)  His submission does not comply with the requirement to list "a specific citation in the record where the fact is established."  N.D.N.Y. L.R. 7.1(a)(3). Nevertheless, municipal defendants properly responded by admitting or denying each of the numbered paragraphs, and the facts admitted by municipal defendants are deemed admitted.

No. 90, Attach. 2 at 3 ¶ 7, 17 ¶ 3.)  In October 2011, a neglect petition was filed against Treistman in Family Court.  (*Id.* ¶ 13; Dkt. No. 90, Attach. 7 at 3-7.)  Treistman alleges that the petition was filed in retaliation for reporting neglectful conduct by Cayley, which was investigated by Ulster County Department of Social Services (DSS) and determined to be unfounded. (2d Am. Compl. ¶¶ 68-71, 87, Dkt. No. 98.)  Triestman also complains that temporary restraining orders, which were entered as a result of the petition, unlawfully restricted his visitation and the topics he could speak about with A.T.  (*Id.* ¶ 88.)

Whittaker, Greene, Woltman, and Boswell are caseworkers or supervisors at Child Protective Services (CPS), a division of DSS.  (Defs.' SMF ¶¶ 3-5, 9-10.)  Jackson, Krisjanis, and Joern are attorneys for DSS. (Defs.' SMF ¶¶ 7-8; 2d Am. Compl. ¶ 10b.)  Schneider and Bennett are licensed clinical social workers with the County's Department of Mental Health (DMH).  (*Id.* ¶¶¶ 11-12.)  Finally, Sorkin is the deputy commissioner of DSS and Hubbs is the assistant director of children and family services of DSS.  (*Id.* ¶ 6; 2d Am. Compl. ¶ 10c.)

### a.    Whittaker and Greene

Whittaker and Greene both work within the investigations unit of

4

CPS. (Dkt. No. 90, Attach. 2 at 6 ¶ 12, 7 ¶ 1.) In September 2011, Whittaker investigated a complaint lodged by Treistman against Cayley and determined it to be unfounded. (Dkt. No. 90, Attach. 2 at 2-3 ¶ 6.) As part of the investigation, Whittaker interviewed Cayley who made her own allegations against Treistman. (*Id.* ¶ 7.) Those allegations asserted that Treistman asked A.T. about custody related issues while videotaping her, gave her energy drinks, and told A.T. that her mother gave her medication that would "kill her and make her heart explode in her chest." (*Id.*) Some of these allegations were corroborated by a social worker from A.T.'s school. (*Id.*) Greene and Whittaker later met with Treistman to investigate the allegations. (*Id.* ¶ 9.) Based on their investigation, they recommended that a neglect petition be filed against him. (*Id.* ¶ 10.)

Whittaker counseled Treistman and advised him to take parenting classes but never threatened or prevented him from being with his daughter. (*Id.* ¶ 13.) Greene's last contact with Treistman was on November 4, 2011 when she arranged a supervised visit, and Whittaker's last contact with Treistman was on November 8, 2011 when she supervised that visitation. (*Id.* ¶ 12; Dkt. No. 90, Attach. 2 at 10 ¶ 10.) The case was then transferred to the Mandated Preventive Care Unit at DSS.

(Dkt. No. 90, Attach. 2 at 6 ¶ 12.)

> b.  Woltman and Boswell

Woltman and Boswell work in the Mandated Preventive Care Unit at DSS.  (Dkt. No. 90, Attach. 2 at 11 ¶ 1, at 21 ¶ 1.)  Woltman supervised visits between Treistman and A.T. starting in November 2011.  (*Id.* at 12 ¶ 1.)  She attended court hearings, ensured that Treistman complied with the temporary orders of protection, and spoke with mental health professionals involved in the case.  (*Id.* ¶¶ 2-3.)  On several occasions, Woltman advised Treistman to avoid discussions that upset A.T.; in particular, conversations about his federal court case, custody issues, and A.T.'s medication.  (*Id.* ¶¶ 4-5.)  Treistman insisted he had a constitutional right to speak to his daughter about any topic.  (*Id.* ¶ 6.)  Despite Woltman's warnings, Treistman continued to speak with A.T. about such topics.  (*Id.*; Dkt. No. 90, Attach. 15.)  Consequently, Woltman and Boswell, her supervisor, decided to forward Woltman's case notes to the legal department to support a new neglect petition.  (*Id.*)  As a result, Family Court issued a new temporary order of protection prohibiting Treistman from speaking about "the federal lawsuit," "rules of visitation," "custody," "medication or side effects," or the "mother and [maternal]

grandmother" with A.T. during their supervised visits.  (*Id.*; Dkt. No. 90, Attach. 14 at 3-5.)  Woltman never told A.T. that Treistman would be arrested or go to jail if he spoke about restricted topics.  (Dkt. No. 90, Attach. 2 at 14 ¶ 6.)

c.    Krisjanis and Jackson

Krisjanis and Jackson are DSS attorneys who filed the October 2011 and February 2013 neglect petitions against Treistman.  (*Id.* at 5 ¶ 10, 25 ¶ 13.)  Jackson appeared on behalf of the County at Family Court proceedings on October 12, 20, and 26, 2011, November 3, 2011, and February 3, 2013.  (Dkt. No. 90, Attachs. 7, 9-10, 13, 16.)  Neither Krisjanis nor Jackson were involved in investigating the allegations against Treistman.  (Dkt. No. 90, Attach. 2 at 5 ¶ 10, 25 ¶ 13.)

d.    Schneider and Bennett

Schneider and Bennett are licensed social workers at DMH.  (Defs.' SMF ¶¶ 11-12.)  Schneider began treating A.T. in January 2011 after A.T. was referred by her school's social worker due to her physical outbursts.  (Dkt. No. 90, Attach. 2 ¶ 3.)  Schneider continued to see A.T. for weekly therapeutic treatment and determined she needed a psychiatric evaluation.  (*Id.* ¶ 4.)  In June 2011, Dr. Howard Gottlieb performed an evaluation and

recommended that A.T. be prescribed medication.  (*Id.* ¶ 8.)  Although

Schneider did not inform Treistman about Dr. Gottlieb's recommendation

due to his custody status, she advised Cayley to share this information with

him.  (*Id.*)

In December 2011, Schneider learned that Treistman arranged for

A.T. to see Dr. Kathy Caproni, a private psychologist.  (*Id.* ¶ 11.)

Schneider spoke with Dr. Caproni in January 2012 about her evaluation of

A.T. and her recommendation that she supervise family therapeutic visits

between A.T. and Treistman.  (*Id.*)  Shortly thereafter, Schneider, Bennett,

her supervisor, and Dr. Gottlieb met and discussed A.T.'s duplicative

treatment with Dr. Caproni.  (*Id.*)  The team decided that Schneider would

provide family therapy to Treistman and A.T.  (*Id.*)  In an individual session,

A.T. expressed to Schneider that she was distressed when her father

spoke about his court case and feared he may go to jail.  (*Id.* ¶¶ 12, 13.)

Schneider advised Treistman to avoid these conversations because A.T.

became anxious.  (*Id.* ¶ 13.)  However, he continued to assert his right to

speak with his daughter about any topic.  (*Id.*)  Schneider also informed

A.T.'s caseworker that Treistman's discussions about such topics were

detrimental to her psychological well-being.  (*Id.*)

e.    Sorkin

Sorkin is the deputy commissioner of DSS and oversees adult and children's services for the county.  (Dkt. No. 90, Attach. 2 at 22 ¶ 4.)  She was not directly involved in A.T.'s supervised visitation.  (*Id.*)

f.    Hubbs

Hubbs is the assistant director of children and family services at DSS.  (2d Am. Compl. ¶ 10c.)  On May 31, 2012, she attended a meeting with members of the Mandated Preventive Care Unit and DMH to discuss which agency would determine when Treistman could have unsupervised visits with A.T.  (Dkt. No. 90, Attach. 2 at 23 ¶ 7.)

2.    *Motion to Dismiss*[4]

Wacks is the attorney who was assigned to represent A.T. in the custody proceeding.  (2d Am. Compl. ¶ 30.)  Between February 14, 2011 and April 3, 2015, Wacks conveyed false statements about Treistman's parental fitness to unnamed others.  (*Id.* ¶ 123.)  Specifically, Wacks represented to unnamed others in an unknown manner that Treistman was dangerous, abused and neglected A.T., did not care about A.T.'s health or

---

[4] In regards to Wacks' motion to dismiss, the facts as they relate to her are drawn from Treistman's second amended complaint and presented in the light most favorable to him.

well-being, and engaged in frivolous litigation.  (*Id.*)

## B.    Procedural History

Treistman filed this action in late December 2012 asserting claims on behalf of A.T. and himself.  (*See generally* Compl.)  After joinder of issue, (Dkt. Nos. 6, 8, 10), Treistman sought a temporary restraining order and preliminary injunction by order to show cause that would prohibit defendants "from interfering with [p]laintiffs actions of association and free speech," (Dkt. No. 12, Attach. 3 at 4).  After court-ordered briefing on the issue, it determined that Treistman was not a proper representative of A.T. for purposes of the litigation, and appointed a guardian ad litem to represent A.T.  (Dkt. Nos. 19, 27.)  A.T.'s guardian ad litem reported to the court that A.T. desired to have all claims asserted on her behalf dismissed. (Dkt. No. 31.)  The court dismissed all claims asserted on A.T.'s behalf and denied Treistman's application for a preliminary injunction.  (Dkt. No. 32.) Treistman's untimely motion for reconsideration was denied, (Dkt. No. 37), and he appealed, (Dkt. No. 38).  The Second Circuit eventually dismissed the appeal as moot, explaining that Treistman informed the Court during oral argument "that the neglect proceedings against him have been dismissed, and that he currently has unrestricted and unsupervised

visitation with his child." *Treistman v. Wacks*, 578 F. App'x 18, 19 (2d Cir. 2014). Before the Circuit's resolution of Treistman's appeal, Wacks and Shelton filed motions to dismiss, which the court granted, and municipal defendants filed a motion for judgment on the pleadings, which the court granted in part and denied in part. (Dkt. Nos. 55, 56, 57, 70.)

Subsequently, municipal defendants stipulated to Treistman's filing of an amended complaint. (Dkt. No. 85, Attach. 1.) Treistman also filed a motion to amend his original complaint to include claims and allegations that municipal defendants refused to stipulate. (Dkt. No. 84.) Before the court's resolution of Treistman's motion to amend, municipal defendants moved for summary judgment and Treistman cross moved for summary judgment, which motions are both pending before the court. (Dkt. Nos. 90, 94.) Magistrate Judge Christian F. Hummel granted in part and denied in part Treistman's motion to amend, which added Hubbs and Joern as municipal defendants and added a defamation claim against the previously dismissed defendant Wacks. (Dkt. No. 97.) Municipal defendants and Treistman advised the court to apply their pending motions to the second amended complaint. (Dkt. Nos. 101, 102.) Thereafter, Wacks filed the pending motion to dismiss for failure to state a claim. (Dkt No. 109.)

Municipal defendants answered Treistman's second amended complaint and asserted a crossclaim against Wacks for contribution or indemnification.  (Dkt. No. 103.)

### III.  Standard of Review

Regarding Wacks' motion to dismiss, the standard of review under Fed. R. Civ. P. 12(b)(6) is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior opinion in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

Regarding the motions for summary judgment, the standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

#### A.    Motion to Dismiss

Wacks argues that Treistman's state law defamation claim should be dismissed because the complaint fails to adequately notify her of the

alleged defamatory statement.  (Dkt. No. 109, Attach. 2 at 6-8.)  Wacks

contends that Treistman does not identify when, to whom, or how the

statement was communicated.  (*Id.*)  In sum and substance, Treistman

counters that he adequately pled the elements of defamation.  (Dkt.

No. 113 at 4-7.)[5]

To state a claim for defamation under New York law, a plaintiff must

allege "a false statement, published without privilege or authorization to a

third party, constituting fault as judged by, at a minimum, a negligence

standard, . . . caus[ing] special harm or constitut[ing] defamation per se."

*Stega v. N.Y. Downtown Hosp.*, __ A.D.3d __, 2017 N.Y. Slip. Op. 139, at

*10 (1st Dep't 2017) (internal quotation marks and citation omitted).  While

New York pleading rules require a party claiming defamation to allege the

"particular words complained of" in his complaint, *see* N.Y. C.P.L.R.

---

[5] Treistman also asserts that his claims of conspiracy under 42 U.S.C. § 1985(3) and violations of his First and Fourteenth Amendment rights alleged against Wacks in his second amended complaint are valid.  (Dkt. No. 113 at 7-8.)  Magistrate Judge Christian F. Hummel already rejected those claims as futile in his decision denying in part Treistman's motion to amend his pleading.  (Dkt. No. 97 at 28-29.)  Consequently, those claims are not before the court.

In addition, Treistman argues that the court should not consider Wacks' motion because it was improperly served.  (Dkt. No. 113 at 9.)  Treistman contends the motion was served via CM/ECF and he is a non-filing user who has not consented to that method of service.  (*Id.*, citing Fed. R. Civ. P. 5(b)(2)(E).)  To the contrary, the court granted Treistman's request to receive electronic e-mail notifications, (Dkt. No. 40), which constitutes service upon receiving users, *see* N.D.N.Y. General Order 22 § 5.2.  As a result, service was proper.

3016(a), state procedural rules do not apply to federal courts sitting in diversity, *see Nickerson v. Commc'n Workers of Am. Local 1171*, No. 504CV00875NPM, 2005 WL 1331122, at *6 (N.D.N.Y. May 31, 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). For that reason, federal courts apply the more lenient Rule 8 pleading standard. *See Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986). Nevertheless, for a defamation claim to survive a Rule 12(b)(6) motion, a plaintiff still must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." *Hillary v. Vill. of Potsdam*, No. 7:12-cv-1669, 2015 WL 902930, at *11 (N.D.N.Y. Mar. 3, 2015) (internal quotation marks and citation omitted). In other words, the allegations must include "the time, place, and manner of the false statement." *Arvanitakis v. Lester*, 145 A.D.3d 650, 651 (2d Dep't 2016).

In the only timely defamation claim alleged against Wacks, (Dkt. No. 97 at 22-23), Treistman fails to adequately plead the nature of her false statement. Treistman alleges that "[f]rom February 2011 to April 3, 2015 [Wacks] did defame and cast aspersions upon the character and reputation of [Treistman] to others [that] were untrue and false." (2d Am. Compl.

14

¶ 227.)  He alleges that Wacks falsely accused him of child abuse and

questioned his parental fitness.  (*Id.* ¶ 123, 229.)  Treistman generally

alleges that Wacks' statements were published to others through some

unidentified medium and, because of those statements, he suffered

damage to his reputation and harm to his business.  (*Id.* ¶ 229.)  Even

assuming that the statements constituted actionable defamation, Treistman

does not identify when, how many, through what means, or to whom the

statements were made over this lengthy time period.  Thus, even under

Rule 8's liberal pleading standard, the second amended complaint fails to

set forth sufficient facts to support a defamation cause of action.  Wacks is

therefore entitled to dismissal on this claim.[6]

**B.    Municipal Defendants' Summary Judgment Motion**

*1.    Rooker-Feldman* Doctrine

Municipal defendants argue that the court lacks subject matter

jurisdiction under the *Rooker-Feldman* doctrine because Treistman seeks

---

[6] Treistman has not sought leave to amend, and the court declines to grant it.  The court recognizes that Treistman is a *pro se* litigant, however, throughout this litigation, he has demonstrated an ability to comply with court orders and make appropriate arguments.  In any event, Treistman has already been afforded two prior opportunities to amend his complaint and the court declines to grant additional leave.  *See Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding courts should give *pro se* litigants at least one opportunity to amend their complaint).

appellate review of a state court judgment. (Dkt. No. 90, Attach. 5 at 20-21.) Treistman responds that the doctrine does not apply because he did not lose in state court. (Dkt. No. 111 at 16-18.) The court agrees with Treistman.

The rationale underlying the *Rooker-Feldman* doctrine is "that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citing 28 U.S.C. § 1257). Under this doctrine, the court is deprived of jurisdiction if four requirements are met. *See id.* The Second Circuit outlines the requirements as follows: (1) the plaintiff must have lost in state court; (2) the plaintiff must now complain of injuries arising from the state court judgment; (3) the plaintiff must ask the federal court to review and reject the state court judgment; and (4) the plaintiff must have commenced the federal action after the state court judgment. *See id.*

Here, municipal defendants contend that Treistman lost in Family Court because he was denied unsupervised visitation as a result of the October 2011 neglect petition. (Dkt. No. 90, Attach. 5 at 21.) After the petition was filed, Family Court issued several temporary orders of protection restricting Treistman's visitation with A.T. (Defs.' SMF ¶ 13; Dkt.

No. 90, Attachs. 8, 11, 14.)  However, the neglect petition was ultimately

dismissed without a final order of disposition at a time not apparent from

the record.  *See Treistman*, 578 F. App'x at 19.  For the purposes of the

*Rooker-Feldman* doctrine, a federal court plaintiff has not lost his state

case if a Family Court petition against him has been dismissed.  *See*

*Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009) (holding that plaintiff

did not lose in state court when there was no final order of disposition

against her and a neglect petition had been dismissed); *see also Graham*

*v. City of New York*, 869 F. Supp. 2d 337, 347-48 (E.D.N.Y. 2012).

Because Treistman did not lose in state court, the *Rooker-Feldman*

doctrine does not deprive this court of jurisdiction.[7]

###    2.    Personal Involvement

Municipal defendants argue that Sorkin, the deputy commissioner of

DSS, is entitled to summary judgment because she was not personally

involved.  (Dkt. No. 90, Attach. 5 at 9.)  In order to be liable for a

constitutional violation, a defendant must have been personally involved in

---

[7] Nor would the *Rooker-Feldman* doctrine apply if Treistman challenged the February 2013 neglect petition.  (Defs.' SMF ¶ 13.)  This neglect petition was also dismissed by Family Court, (Dkt. No. 90, Attach. 17 at 17-18), and, moreover, Treistman commenced his federal action in 2012, before the 2013 neglect petition was even filed.  (*See generally* Compl.)

the allegedly wrongful conduct.  *See Colon v. Coughlin*, 58 F.3d 865, 872

(2d Cir. 1995).  Here, it is undisputed that Sorkin was not directly involved

nor on notice of allegedly unconstitutional acts imposing or enforcing

restrictions on visitation between Treistman and A.T.  (Dkt. No. 90, Attach.

2 at 22 ¶ 4; Dkt. No. 90, Attach. 17 at 61.)  Nor did Treistman allege that

Sorkin failed to prevent any constitutional violations.  (*See generally* 2d

Am. Compl.)  As a result, all claims against Sorkin are dismissed.

    *3.*    *Immunity*

        a.    Krisjanis and Jackson

Municipal defendants argue that DSS attorneys, Krisjanis and

Jackson, are entitled to absolute immunity on all claims.[8]  (Dkt. No. 90,

Attach. 5 at 2-7.)  Treistman contends that he sufficiently alleged that these

defendants cannot receive immunity because they worked in an

investigatory capacity.  (Dkt. No. 111 at 8-9.)

Attorneys who initiate and prosecute child protective proceedings are

entitled to absolute immunity from section 1983 claims arising from the

---

[8] The court recognizes that municipal defendants filed this motion before defendant Joern as well as defendant Hubbs were added as parties.  (Dkt. No. 97 at 23-26.)  As a result, municipal defendants may supplement their motion within fourteen days from the date of this Memorandum Decision and Order, and Treistman shall have fourteen days to respond. Municipal defendants will then have seven days to reply.

performance of their duties. *See Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010); *Walden v. Wishengrad*, 745 F.2d 149, 150 (2d Cir. 1984). Courts have extended this immunity to conspiracy claims under section 1985. *See, e.g.*, *Halpern v. City of New Haven*, 489 F. Supp. 841, 844 (D. Conn. 1980). Additionally, municipal defendants "involve[d in] the conscious exercise of discretion of a judicial or quasi-judicial nature" receive absolute immunity from tort claims under New York law. *Arteaga v. New York*, 72 N.Y.2d 212, 216 (1988); *see Cornejo*, 592 F.3d at 130; *Carossia v. City of New York*, 39 A.D.3d 429 (1st Dep't 2007).

Here, Krisjanis and Jackson only performed acts arising from their duties as DSS attorneys, namely, filing the neglect petitions against Treistman and appearing for court proceedings. (Dkt. No. 90, Attach. 2 at 5 ¶¶ 10-11.) Consequently, the court finds that Krisjanis and Jackson are absolutely immune from all claims.[9] Treistman's allegations are insufficient to demonstrate the existence of a genuinely disputed material fact. *See* Fed. R. Civ. P. 56(c)(1).

---

[9] While the state law claims were not specifically mentioned in municipal defendants' motion papers on the issue of immunity, Treistman was sufficiently on notice that municipal defendants sought dismissal of all claims against Krisjanis and Jackson and, therefore, had an opportunity to respond as to all claims.

b.      Greene and Whittaker

Municipal defendants also contend that Greene and Whittaker are absolutely immune because they are agency officials who performed functions analogous to that of prosecutors.  (Dkt. No. 90, Attach. 5 at 9-11.) Treistman points out, and the court agrees, that Greene and Whittaker performed investigatory functions which preclude them from receiving absolute immunity.  (Dkt. No. 11 at 9-10.)

Indeed, agency officials receive absolute immunity for acts that are functionally equivalent to that of a prosecutor.  *See Butz v. Economou*, 438 U.S. 478, 515 (1978).  But such immunity does not extend to officials acting in an investigatory capacity.  *See DiBlasio v. Novello*, 344 F.3d 292, 300-01 (2d Cir. 2003).

Here, municipal defendants readily concede that Greene and Whittaker investigated Treistman and Cayley's allegations of neglect against each other.  (Dkt. No. 90, Attach. 2 at 2 ¶¶ 4-9.)  As such, neither defendant is entitled to absolute immunity.

c.      Schneider, Bennett, Woltman, and Boswell

Again, municipal defendants argue that absolute immunity applies to Scheider, Bennett, Woltman, and Boswell who are either social workers or

20

caseworkers with the County. (Dkt. No. 90, Attach. 5 at 11-18.) Treistman

counters that the authority upon which defendants rely is inapplicable.

(Dkt. No. 111 at 11-12, 13-14.) The court agrees with Treistman.

Defendants rely exclusively on *Mosher-Simons v. County of Allegany*,

99 N.Y.2d 214, 220 (2012), from the New York State Court of Appeals to

support their immunity argument. Indeed, *Mosher-Simons* held that

absolute immunity applies against New York state tort claims when

executing court orders. *See id.* Treistman, however, predominately

asserts federal claims under section 1983, where *Mosher-Simons* has no

application. *See, e.g.*, *Peker v. Steglich*, 324 F. App'x 38, 39 (2d Cir.

2009); *Sutton v. Tompkins Cty.*, 617 F. Supp. 2d 84, 99 (N.D.N.Y. 2007).

The only state law claim asserted against these defendants is a

tortious interference with contract claim against Schneider and Bennett for

contacting Dr. Caproni and directing her to cease therapy with Treistman

and A.T. (2d Am. Compl. ¶¶ 213-17.) In *Mosher-Simons*, the court held

that a county was immune from a negligence claim where a Family Court

ordered the county to perform a home study to determine its suitability for a

child's placement. *See* 99 N.Y.2d at 220. Under the rationale of judicial

immunity, the court granted the county immunity because it served as "an

arm of the court" by executing the order. *Id.* at 218. Here, however, absolute immunity does not apply because Schneider or Bennett were not performing a specifically delegated judicial duty when they contacted Dr. Caproni. *See Gotlin v. City of New York*, 26 Misc. 3d 514, 520-21 (Sup. Ct. 2009) (holding child protective agency was not entitled to immunity for claims arising from home supervision because it was not specifically ordered by Family Court), *aff'd* 90 A.D. 605 (2d Dep't 2011). Nothing in the temporary orders of protection submitted to this court directs any action on the part of these defendants. (Dkt. No. 90, Attachs. 8, 11, 14.) Therefore, absolute immunity does not apply.

    3.    *Municipal Liability*

Municipal defendants argue that Treistman has not submitted any proof that the County has an unconstitutional policy or practice. (Dkt. No. 90, Attach. 5 at 18-20.) Treistman contends that he sufficiently alleged that municipal defendants have an unconstitutional practice of gender discrimination by targeting fathers in DSS investigations and that they fail to train their caseworkers to avoid infringing on a parent's constitutional rights. (Dkt. No. 111 at 14-16.)

Municipal liability requires that a plaintiff suffer a constitutional

violation due to a municipality's official policy or custom and there must be a causal relationship between the violation and the municipal policy or practice. *See Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). Absent accompanying proof of an existing unconstitutional policy, a single constitutional violation is insufficient to impose municipal liability. *See id.* (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).

Treistman relies solely on his complaint and points to nothing in the record to raise a question of fact about whether the municipal defendants have an unconstitutional policy or practice. (Dkt. No. 111 at 14-16.) The only arguable evidence is that DSS filed neglect petitions against Treistman and not Cayley. Treistman contends that municipal defendants have discriminated against him because of his gender by not filing a neglect petition against Cayley when wrongful conduct was alleged against her. Even if Cayley and Treistman were similarly situated for the purpose of the Fourteenth Amendment, *see Knight v. Conn. Dep't of Public Health*, 275 F.3d 156, 166 (2d Cir. 2001) (noting, among other things, an equal protection violation requires a showing that the plaintiff was selectively treated compared with similarly situated individuals), municipal liability

could not be imposed for a sole constitutional violation.  *See Mitchell*, 841 F.3d at 80.  Therefore, municipal defendants are entitled to summary judgment on this claim.  Because municipal liability does not lie, all claims against municipal defendants in their official capacities are also dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

**C.    Rule 56(f)**

The court has identified alternative grounds that may entitle the municipal defendants to summary judgment on the remaining claims. Under Rule 56(f)(2) of the Federal Rules of Civil Procedure, the court may grant summary judgment "on grounds not raised by a party" once it has "giv[en] notice and a reasonable time" for the parties to respond.  *See Willey v. Kirkpatrick*, 801 F.3d 51, 62-63 (2d Cir. 2015).  Here, the parties are directed to brief whether qualified immunity would apply to the remaining defendants who are not shielded by absolute immunity. Additionally, the parties should address the viability of the state law claims. Municipal defendants shall submit briefing within fourteen days from the date of this Memorandum-Decision and Order, and Treistman shall have fourteen days to respond.  Municipal defendants will have seven days to reply.

24

**D.    Treistman's Cross Motion for Summary Judgment**

Treistman cross moves for summary judgment without citing a single authority which entitles him to judgment.  (Dkt. No. 94, Attach. 1.)  His motion consists entirely of selected allegations from his complaint, which he contends "are not controverted and are in fact admitted."  (*Id.* at 3.) Treistman asserts that the affidavits submitted in support of municipal defendants' motion verify his facts and that municipal defendants' exhibits, including transcripts of the underlying Family Court proceedings and neglect petitions, establish that "[d]efendants sought to, and did, prohibit the federal privileges [Treistman] had, using their actions and authority under color of law."  (*Id.* at 3, 8-9.)  Municipal defendants argue that the court should deny the motion because it is untimely, procedurally deficient, and, in any event, lacks merit.  (Dkt. No. 108, Attach. 3 at 2-11.)

Even assuming Treistman timely filed this motion and complied with the procedures outline in Local Rule 7.1(a)(3), the court still denies his motion on the merits.  Because Treistman cites no authority in support of his motion, he fails to meet his burden to prove that he is entitled to judgment.  *See* Fed. R. Civ. P. 56(a); *Wagner*, 827 F. Supp. 2d at 92.  As such, his motion is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Wacks' motion to dismiss (Dkt. No. 109) is **GRANTED** and the Clerk is directed to terminate Wacks from this action; and it is further

**ORDERED** that municipal defendants' motion for summary judgment (Dkt. No. 90) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to claims against Krisjanis, Jackson, and Sorkin in their individual capacities; and

**GRANTED** with respect to claims against Ulster County and municipal defendants in their official capacities; and

**DENIED** in all other respects; and it is further

**ORDERED** that Treistman's cross motion for summary judgment (Dkt. No. 94) is **DENIED**; and it is further

**ORDERED** that the Clerk is directed to terminate Krisjanis, Jackson, Sorkin and Ulster County from this action; and it is further

**ORDERED** that municipal defendants shall supplement their motion and submit briefing consistent with this Memorandum-Decision and Order

26

within fourteen (14) days of entry, Treistman shall have fourteen (14) days

to respond, and municipal defendants shall have seven (7) days to reply;

and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

February 16, 2017
Albany, New York

Gary L. Sharpe
U.S. District Judge