**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BEN GARY TREISTMAN,**

               Plaintiff,

         v.

**AMY GREENE et al.,**

               Defendants.

**1:12-cv-1897**
**(GLS/CFH)**

_____

**APPEARANCES:**                                                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Ben Gary Treistman
Pro Se
28 Garrison Road
Shady, NY 12409

**FOR THE DEFENDANTS:**
*Amy Greene, Kelly Whittaker,*
*Denise Woltman, Charlene Boswell,*
*Mary Ellen Schneider, Joseph Bennett,*
*Karin Hubbs, and Pamela Joern, Esq.*
Cook, Netter Law Firm                                                ERIC M. KURTZ, ESQ.
P.O. Box 3939                                                        ROBERT D. COOK, ESQ.
85 Main Street
Kingston, NY 12402


**Gary L. Sharpe**
**Senior District Judge**

**MEMORANDUM-DECISION AND ORDER**

### I. Introduction

On January 4, 2016, plaintiff *pro se* Ben Gary Treistman filed a second amended complaint against defendants Amy Greene, Kelly Whittaker, Denise Woltman, Charlene Boswell, Mary Ellen Schneider, Joseph Bennett, Karin Hubbs, and Pamela Joern, Esq., which consisted of eighteen counts from his original complaint, (Compl., Dkt. No. 1), and ten supplemental counts pursuant to 42 U.S.C. §§ 1983, 1985 and New York common law, (2d Am. Compl., Dkt. No. 98). The court previously disposed of both parties' motions for summary judgment, (Dkt. Nos. 90, 94), and ordered them to file supplemental briefs after identifying alternative grounds for summary judgment, (Dkt. No. 115).

Specifically, the court directed the parties to brief whether qualified immunity applies and the viability of state law claims. (Dkt. No. 115 at 24.) Additionally, the court gave each party an opportunity to supplement their original filings in light of the subsequent addition of Hubbs and Joern as parties. (Dkt. No. 115 at 18, n.8.)

After considering the parties' supplemental papers, (Dkt. Nos. 116,

117, 120), and for the reasons that follow, the court grants summary judgment in favor of defendants and dismisses all remaining claims.

## II. Background

**A.   Facts**

The court presumes a basic familiarity with the undisputed material facts of this case from the court's previous summary judgment decision,[1] (Dkt. No. 115 at 3-9), which guide the present analysis.

**B.   Procedural History**

Likewise, the procedural posture of this case has been fully outlined in the court's previous summary judgment decision, (*id.* at 10-12), wherein the court granted Valerie Lynn Wacks Esq.'s motion to dismiss, (Dkt. No.

---

[1] Plaintiff belatedly attempts to controvert undisputed facts in his supplement brief. (Dkt. No. 117 at 5-10.)  However, it is an inappropriate time to present additional evidence for issues that were already decided.  To the extent that plaintiff's subsequently-submitted evidence could have been discovered with due diligence, does not relate to the narrow issues now before the court, or is an attempt to controvert previously undisputed facts, it is disregarded.  *See* Fed. R. Civ. P. 60.  Nonetheless, insofar as the court is able to liberally construe the *pro se* plaintiff's belated response to defendants' statement of material facts, (Dkt. No. 117, Attach. 1), as cites to the record in support or his current arguments, it has done so.

In a similar vein, plaintiff spends over half of his supplemental memorandum of law disagreeing with the court's prior decision.  (Dkt. No. 117 at 1-10.)  The opportunity to make such arguments passed fourteen days after the entry of the challenged judgment, which was the deadline to submit a motion for reconsideration.  *See* N.D.N.Y Local Rule 7.1(g).  Whereas plaintiff's *pro se* status may constitute "good cause" to consider untimely filed papers pursuant to N.D.N.Y. L.R. 7.1(b)(3), the court has already reminded plaintiff about the consequences of filing a late request for reconsideration.  (Dkt. No. 37.)

109), and defendants' motion for summary judgment, (Dkt. No. 90), with respect to Krisjanis, Jackson, and Sorkin in their individual capacities and all defendants in their official capacities,[2] and denied plaintiff's cross motion for summary judgment, (Dkt. No. 94; Dkt. No. 115 at 26).  As such, the remaining defendants are state child care workers, Greene, Whittaker, Woltman, Boswell, Schneider, Bennett, and Hubbs, and an attorney for the Ulster County Department of Social Services, Joern.[3]  The parties' supplemental briefs are now before the court for consideration.  (Dkt. Nos. 116,117,120.)

### III.  Standard of Review

Under Federal Rule of Civil Procedure 56(f), district courts have discretion to grant summary judgment *sua sponte* "[a]fter giving [parties] notice and a reasonable time to respond" and "after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f), (f)(3); *see, e.g.*, *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,

---

[2] Including Ulster County itself.

[3] Plaintiff does not argue with defendants' contention that Joern is entitled to prosecutorial immunity, (Dkt. No. 116, Attach. 1 at 11-14), and concedes that "Joern should be dismissed as a party to this case," (Dkt. No. 117 at 3).  Given plaintiff's consent to dismissal of his claim against this defendant, the court summarily dismisses all claims against her.  *See* N.D.N.Y. L.R. 7.1(b)(3).

756 F.3d 73, 80 (2d Cir. 2014).

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

### A.  Qualified Immunity

Qualified immunity is intended to "strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  *Jemmott v. Coughlin*, 85 F.3d 61, 66 (2d Cir.1996) (internal quotation marks and citation omitted).

> "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.  Again and again the public interest calls for action which may turn out to be founded on a mistake[.]"

*Amore v. Novarro*, 624 F.3d 522, 529-30 (2d Cir. 2010) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d. Cir. 1949) (Learned Hand, J.)).  As such,

appellate courts have "expressly encouraged the use of summary judgment to quickly extricate government officials from the burdens of defending against insubstantial suits." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815-16 (1982)); *see Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[The Supreme Court] repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.").

Therefore, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Second Circuit extends this shield if either: "(1) the official's actions did not violate clearly established law, or (2) . . . the official was objectively reasonable in believing in the lawfulness of his actions."[4] *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 101-02 (2d Cir. 2003).

   1.   *Objective Reasonableness*

---

[4] Courts are permitted to exercise their sound discretion in deciding which of these prongs to address first based on the circumstances of the particular case. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In the Second Circuit, "[a] party is entitled to summary judgment on qualified immunity grounds if the court finds that . . . no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the defendant[s] to believe that [they were] acting in a fashion that did not clearly violate an established federally protected right." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (internal quotation marks and citation omitted).

"An [official]'s actions are objectively reasonable if [officials] of reasonable competence could disagree on the legality of the defendants' actions." *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001) (internal quotation marks and citations omitted); *see Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (finding that qualified immunity protects officials performing discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."). This lenient standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (internal quotation marks and citation omitted). As a

result, "[t]he presumption in favor of finding qualified immunity is necessarily high," *Crotty*, 346 F.3d at 102, especially when defendants' conduct adheres to a valid statute. *See id.* at 102, 104. Additionally, officials acting to safeguard the health and welfare of a child are entitled to qualified immunity in the performance of discretionary functions. *See Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) ("[Qualified immunity] insure[s] that publicly employed caseworkers have adequate latitude to exercise their professional judgment in matters of child welfare."); *Robison v. Via*, 821 F.2d 913, 922 (2d Cir.1987) (extending qualified immunity for state officials who removed child from home because of suspected abuse).

Plaintiff asserts that "defendants knew, or should have known, that to curtail the rights of a parent to care for and speak with his daughter as his legal discretion and conscious dictates, was a violation of law." (Dkt. No. 117 at 12.) Defendants argue that New York's Social Services Law (SSL) counterbalances plaintiff's rights with the compelling governmental interest in the protection of minor children and thus they are entitled to qualified immunity. (Dkt. No. 116, Attach. 1 at 3-8.) They further contend that the undisputed facts demonstrate nothing more than "caseworkers and their supervisors making discretionary decisions in the best interests of

8

plaintiff's daughter." (*Id.* at 8.)  Plaintiff responds by arguing that "the acts that [the SSL] provides immunities for have nothing to do with the acts, subject matter[,] or claims made in the [second] amended complaint," (Dkt. No. 117 at 14), and that defendants' acts were unauthorized, (*id.* at 6,16).[5]

Indeed, a parent has a fundamental liberty interest in the care, custody, and management of his or her child. *See Santosky v. Kramer*, 455 U.S. 745, 753; *United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005); *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000).  However, "[n]o matter how important the right to family integrity, it does not automatically override the sometimes competing 'compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'"  *McIntyre*, 235 F.3d at 758 (quoting *Wilkinson ex rel.*

---

[5] Plaintiff also argues that a state-created qualified immunity cannot shield an official from liability for claims created under federal law.  (Dkt. No. 117 at 12-14.)  To be sure, the subjective *mens rea* elements of wilful misconduct or gross negligence, as proscribed by SSL § 419, do not negate the proper objective analysis for evaluating qualified immunity.  (*Id.* at 14.)  The Supreme Court made this clear when it abandoned a subjective good faith inquiry in favor of an objective analysis.  *See Harlow*, 457 U.S. at 816-18.  The court also agrees with plaintiff that the Supremacy Clause may prohibit a state from immunizing its citizens from federal lawsuits.  (Dkt. No. 117 at 13.)  However, plaintiff overlooks the important role that a presumptively valid state statute plays in analyzing defendants' objective reasonableness.  *See Crotty*, 346 F.3d at 102, 104.  Thus, although the "good faith" test set forth by the state statute may be inapplicable, the scope of the immunization provided by the state statute and related guidelines provided by SSL are pertinent to this analysis insofar as they would reasonably lead a child care worker to believe that they were not violating plaintiff's clearly established rights.

*Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999)); *see van Emrik v. Chemung Cty. Dep't of Soc. Servs.*, 911 F.2d 863, 866 (2d Cir. 1990). By the same token, this important governmental interest buttresses the SSL. *See* SSL § 411.[6]

SSL § 419's scope of immunity, upon which defendant relies, (Dkt. No. 116, Attach. 1 at 4), incorporates various sections of the SSL. *See* SSL § 419. Specifically, § 424 of the SSL requires child protective services (CPS) to commence an investigation and render an evaluation to determine whether a report of child maltreatment is founded. *See id.* § 424(3),(7). The section also requires CPS to offer appropriate recommendations based on their investigation and allows them to inform parents of their authority to take action that corresponds with their findings. *See id.* § 424(10). Additionally, CPS is mandated to act to promote the best interest of the child in initiating court proceedings, making referrals,

---

[6]
> Abused and maltreated children in this state are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of [Title 6] to encourage more complete reporting of suspected child abuse and maltreatment and . . . a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child . . . from further abuse or maltreatment and rehabilitative services for the child . . . and parents involved.

SSL § 411.

assisting the family court during *all* stages of a proceeding, and coordinating and monitoring rehabilitative services for families. *See id.* § 424(11)-(13). However, SSL § 419 is but one of many statutes that provides guidelines for child care workers.

Additionally, social services officials are broadly required to safeguard a child's welfare and stabilize the familial relationship. *See id.* § 397(2)(a). Further, as mandatory reporters, social workers are obligated to report when they have reasonable cause to suspect that a child or parent coming before them in their official capacity reveals circumstances demonstrative of child maltreatment. *See id.* § 413(1)(a). As such, it is reasonable for child care workers to take steps to avoid circumstances that may facilitate child maltreatment and the subsequent filing of a report—especially since they face criminal penalties for failing to do so. *See id.* § 420.

The evidence fails to demonstrate that any defendants exceeded the scope of these statutory requirements; thus, there is a presumption in favor of qualified immunity. *See Crotty*, 346 F.3d at 102, 104. To the extent that defendants' actions are not directly covered by statutory guidelines as plaintiff contends, (Dkt. No. 117 at 14, 16), the undisputed facts show

11

nothing more than child care workers making discretionary decisions in the best interests of plaintiff and plaintiff's daughter. *See Robison*, 821 F.2d at 922; *Anderson*, 483 U.S. at 638; *Defore*, 86 F.3d at 50. As discussed below, no rational finder of fact could conclude that defendants' conduct "was so flawed that no reasonable [child care worker] would have made . . . similar choice[s]." *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir.1995).

        a.     *Schneider and Bennett*

Plaintiff alleges that Schneider violated his First Amendment rights and Fourteenth Amendment right to parent-child association, (Dkt. No. 98 at 36-37), and conspired with others to violate the same, (*id.* at 37), by directing him to avoid discussing certain topics with his daughter, (*id.* at 36, 37). Plaintiff also alleges Schneider and Bennett interfered with his parental rights by seeking to have Dr. Kathleen Caproni stop administering therapy to plaintiff and plaintiff's child. (*Id.* at 52-53.)

The undisputed facts, (Dkt. No. 115 at 7-8), fail to demonstrate anything more than Schneider and Boswell coordinating and monitoring rehabilitative services and issuing recommendations based on findings of harm to plaintiff's daughter. *See* SSL § 424(10)-(13). Any actions aimed at addressing "duplicative treatment," (Dkt. No. 115 at 8), were taken to

further the best interests of the child and promote rehabilitation.  *See* SSL §§ 397(2)(a), 424(10)-(13).  Specifically, communications with mental health professionals involved in the case were in-line with SSL § 424(11).  Additionally, Schneider's suggestions that plaintiff stop discussing topics that negatively affected his daughter were designed to protect the child and stabilize her relationship with her father.  *See id.* § 397(2)(a).  As such, no rational jury could find that a social worker of reasonable competence could believe that Schneider and Bennett's actions were unlawful.  *See Ford*, 237 F.3d at 162.

  b. *Woltman, Boswell, and Hubbs*

Next, plaintiff alleges that Woltman and Boswell conspired with Schneider to violate plaintiff's First Amendment rights and right to parent-child association under the Fourteenth Amendment.  (Dkt. No. 98 at 37-38.)  He also alleges that Woltman and Boswell violated his First and Fourteenth Amendment rights by prohibiting certain actions, including conversations between plaintiff and his daughter, (*id.* at 38-39), and directing plaintiff not to use certain excessive discipline and suggesting that plaintiff complete parenting classes as a result, (*id.* at 42-43).  Plaintiff further alleges claims against Woltman and Boswell for warning him to

13

stop letting his daughter eat certain foods and access certain media content. (*Id.* at 56.) Additionally, plaintiff alleges that Woltman, Boswell, and Hubbs violated his rights under the First and Fourteenth Amendment by directing him to stop speaking about certain matters involving family court and past experiences regarding custody, (*id.* at 57-58), and interfered with his litigation efforts by prohibiting communications between him and his daughter that were related to this lawsuit, (*id.* at 59-61).

The undisputed facts, (Dkt. No. 115 at 6-7), demonstrate that plaintiff was engaging in certain activities and conversations about the lawsuit, custody issues, and proscribed medication that negatively affected his daughter. As a result, plaintiff was advised on several occasions that his actions were upsetting his daughter.[7] (*Id.*) These facts fail to demonstrate that defendants' conduct would lead a rational jury to conclude that an

---

[7] To support these particular claims, plaintiff provided an undercover video recording of meetings with these defendants to the court after filing his response to defendants' supplemental motion for summary judgment. (Dkt. No. 118.) Defendants argue that this attempt to introduce evidence is untimely, inadmissable, and contrary to Fed. R. Civ. P. 56(c). (Dkt. No. 120 at 5.) Regardless of whether this belated video submission is properly before the court or admissible, the tape merely displays various defendants expressing their professional opinions while plaintiff attempts to manipulate them into making damaging statements. The recording demonstrates that defendants were concerned about inappropriate, adult conversations initiated by plaintiff during his supervised visits that negatively affected his young daughter. Ironically, plaintiff's clandestine video perhaps best demonstrates the difficult position that child care workers find themselves in when balancing their duty to protect the best interests of the child with the fundamental rights of said child's parent(s).

objectively reasonable child care worker would believe that their actions were violating plaintiff's federal rights. To the contrary, defendants acted within statutory guidelines when they assisted the Family Court in plaintiff's compliance with the temporary orders of protection and provided recommendations for the parent to promote the child's best interests upon identifying maltreatment. *See* SSL §§ 424(10),(12). To the extent that defendants directed plaintiff to avoid activities that they concluded harmed plaintiff's daughter, it is clear that they undertook such actions to safeguard the health and welfare of the child. *See id.* § 397(2)(a); *Robison*, 821 F.2d at 922. The court agrees with defendants that the record demonstrates nothing more than officials "standing by [their] decision requesting plaintiff to refrain from discussing his federal lawsuit and status with his daughter as it was in her best interest." (Dkt. No. 116, Attach. 1 at 15.) The facts do not indicate that these child care workers were "plainly incompetent" or that they "knowingly violated" the law. *See Manganiello*, 612 F.3d at 165. As such, application of qualified immunity assures that these child care workers retain "adequate latitude to exercise their professional judgment in matters of child welfare." *Defore*, 86 F.3d at 50.[8]

---

[8] Additionally, there is no evidence in the record that any defendants interfered with plaintiff's litigation efforts. On the contrary, the record demonstrates that plaintiff's daughter

### c. *Whittaker and Greene*

Additionally, plaintiff alleges that Whittaker and Greene interfered with his parental rights and violated other associated rights under the First and Fourteenth Amendments by directing him to adhere to certain requirements related to communications with his daughter. (Dkt. No. 98 at 44-45.) Plaintiff also alleges that these defendants discriminated against him based on his gender, namely by finding an incident he reported to be unfounded and instituting a neglect proceeding against him instead. (*Id.* at 46, 47-48.)

The court agrees with defendants that "[plaintiff] cites to no specific facts where the[se] defendants were making decisions outside of the scope of their duties as caseworkers for . . . [CPS]." (Dkt. No. 116, Attach. 1 at 7.) Rather, the undisputed facts, (Dkt. No. 115 at 4-5), show these child care workers reasonably carried out their statutory duties—including their investigation that revealed potential neglect on plaintiff's part. As mandatory reporters, Whittaker and Greene both had a duty to bring a report if circumstances evidenced child abuse. *See* SSL

---

independently decided that she did not wish to be a part of her father's litigation. (Dkt. No. 31 at 3-4.) Therefore, to the extent that this portion of plaintiff's claims survives the court's application of qualified immunity, it is summarily dismissed pursuant to Rule 56(e)(3).

§ 413(1)(a).  They were also well within their scope of employment when recommending that plaintiff not discuss topics that detrimentally affected his daughter's mental health.  *See id.* § 397(2)(a).   As such, no rational finder of fact could conclude that their conduct "was so flawed that no reasonable [child care worker] would have made a similar choice." *Lennon*, 66 F.3d at 425.

B. <u>**Viability of Remaining State Law Claims**</u>

Plaintiff also asserts several state law claims against defendants: negligent infliction of emotional distress against Whittaker and Greene, (Dkt. No. 98 at 43-44), tortious interference with contractual relations against Schneider and Bennett, (*id.* at 51-52), and negligent breach of duty against Woltman, Hubbs, and Boswell, (*id.* at 66).

Although the qualified immunity analysis for federal purposes centered on objective reasonableness, the immunity issue for state law purposes turns on whether defendants acted in good faith.  *See Van Emrik v. Chemung Cty. Dep't of Soc. Servs.*, 191 A.D.2d 143, 147 (3d Dep't. 1993); SSL § 419.  As such, defendants are shielded from liability if they acted within the scope of employment and did not engage in willful misconduct or gross negligence.  *See* SSL § 419.  In this context, there is

a statutory presumption that actions taken to protect a child are made in good faith.  *See id*.

For the aforementioned reasons stated in the qualified immunity analysis above and given that the undisputed evidence demonstrates that defendants "[were] acting in the discharge of their duties and within the scope of their employment, and that such liability did not result from [their] willful[] misconduct or gross negligence," *Van Emrik*, 191 A.D.2d at 147, defendants are also immune from the remaining state law claims.

## C. <u>Declaratory and Injunctive Relief</u>

The court's grant of qualified immunity only bars monetary damages. *See Robinson v. New York*, 486 F. App'x. 905, 907 (2d Cir. 2012). Therefore, it does not foreclose plaintiff's claims to the extent they seek declaratory and injunctive relief.  (2d Am. Compl. ¶ 273.)  However, that relief is nonetheless unavailable.

By seeking a declaration that defendants' conduct violated his rights, plaintiff "asks the court only to recognize a past wrong, which, in the context of declaratory relief, does not in itself amount to that real and immediate threat of injury necessary to make out a case or controversy." *Morales v. City of New York*, 59 F. Supp. 3d 573, 581-82 (S.D.N.Y. 2014).

A court cannot be "asked to answer the hypothetical question whether the defendants would have been liable apart from their defense of good faith." *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977). Rather, "[f]or a declaratory judgment to issue, there must be a dispute which calls . . . for an adjudication of present right upon established facts." *Id.* (internal quotation marks and citation omitted).

Because the Second Circuit, in reviewing plaintiff's earlier appeal, found that "the neglect proceedings against [plaintiff] have been dismissed, and . . . he currently has unrestricted and unsupervised visitation with his child," *Treistman v. Wacks*, 578 F. App'x. 18, 19 (2d Cir. 2014), there is no present right at stake and plaintiff's claim for prospective declaratory relief, (2d Am. Compl. ¶ 273), is moot. *See Ashcroft*, 431 U.S. at 172.

Likewise, the portion of plaintiff's second amended complaint seeking injunctive relief, (2d Am. Compl. ¶ 273), must also fail because "[i]njunctive relief may only be recovered from parties in their official capacities." *Ziemba v. Armstrong*, No. 3:02CV2216, 2004 WL 1737447, *2 (D. Conn. July 30, 2004). Because the only remaining claims are against defendants in their personal capacities, (Dkt. No. 115 at 24), plaintiff is barred from injunctive relief as well.

19

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Counts I, II, III, VII, VIII, IX, X, XI, XIV, and XV and Supplemental Counts I, II, IV, V, and X are dismissed as against remaining defendants; and it is further

**ORDERED** that plaintiff's second amended complaint (Dkt. No. 98) is dismissed; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 9, 2017  
Albany, New York

*Gary L. Sharpe*  
Gary L. Sharpe  
U.S. District Judge